## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JARED NALLY and
THE INDIAN LEADER ASSOCIATION,

    Plaintiff,

v.

RONALD J. GRAHAM, in his individual and
official capacity as President of Haskell Indian
Nations University,

HASKELL INDIAN NATIONS UNIVERSITY,

TONY L. DEARMAN, in his official capacity as
Director of the Bureau of Indian Education, and

BUREAU OF INDIAN EDUCATION,

    Defendants.

No. 21-2113-JAR-TJJ

## MEMORANDUM IN SUPPORT OF DEFENDANT RONALD GRAHAM'S MOTION TO DISMISS PLAINTIFFS' THIRD CAUSE OF ACTION

Defendant Ronald Graham, in his personal capacity,[1] moves to dismiss Plaintiffs' Third

Cause of Action pursuant to Fed. R. Civ. P. 12(b)(6) because there is no cause of action under

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for

Plaintiffs' First Amendment retaliation claims against Dr. Graham in his personal capacity.

Plaintiffs allege that Dr. Graham knowingly and purposely retaliated against (1) Plaintiff Nally

by issuing the October 16, 2020 "Directive," which was a prior restraint on his protected

expression; and (2) the Indian Leader Association by imposing certain financial and

---

[1] Plaintiffs only assert *Bivens* claims against Dr. Graham in his personal capacity.  Doc. 1 at 40.

administrative hurdles to the operation of *The Indian Leader*.  Plaintiffs seek damages under *Bivens* for these alleged First Amendment violations.

Plaintiffs' claims fail because the Supreme Court has never recognized a *Bivens* cause of action for First Amendment violations, let alone in the novel context of federally owned and operated universities, and special factors counsel hesitation against recognition of Plaintiffs' claims in this new context.  Even if this Court were to recognize a *Bivens* remedy here, Plaintiffs' individual-capacity claims should still be dismissed because Dr. Graham is entitled to qualified immunity.  For these and the reasons discussed below, the Court should dismiss Plaintiffs' Third Cause of Action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## Background

Haskell Indian Nations University ("HINU") is one of two tribal colleges that is wholly funded and operated under the control and management of the Bureau of Indian Education ("BIE"), an agency within the U.S. Department of the Interior.  *Doe H. v. Haskell Indian Nations Univ.*, 266 F. Supp. 3d 1277, 1280 n.1 (D. Kan. 2017).  Plaintiffs in this case are HINU student Jared Nally ("Nally") and the Indian Leader Association, an unincorporated student organization which publishes HINU's student newspaper, *The Indian Leader*.  Since January 2020, Nally has been the editor-in-chief of *The Indian Leader*.  ECF No. 1 at ¶ 13.

On March 2, 2021, Plaintiffs filed a Complaint against HINU, BIE, BIE Director Tony L. Dearman in his official capacity, and then-HINU President Dr. Graham in both his official and individual capacities.  *See* ECF No. 1.  Dr. Graham served as President of HINU until May 7, 2021, when he was removed and replaced with Acting President Dr. Tamarah Pfeiffer.[2]

---

[2]  *See* https://www.haskell.edu/presidents-office/administration/

The Complaint alleges seven separate causes of action.  *See* ECF No. 1 ¶¶ 172-274. Under their Third Cause of Action, Plaintiffs assert a *Bivens* First Amendment retaliation claim against Dr. Graham for his conduct with respect to (1) the Directive issued to Nally on October 16, 2020; and (2) a series of allegedly retaliatory actions taken against the Indian Leader Association.  *See id.* at ¶ 208-09.

## A.  The October 16, 2020 Directive.

On October 16, 2020, Dr. Graham issued a memorandum addressed to Nally with the subject heading "Directive."  *Id.* at ¶ 81.  The Directive reminds Nally of his duty as a HINU student to "treat fellow students, University staff, and University officials with appropriate respect" in accordance with the Code of Student Conduct, and that "[f]ailure to do so may result in disciplinary action."  *Id.* at ¶ 89.  It then directs Nally to comply with the following mandates:

**You will NOT:**

- Attack any student, faculty, or staff member with letters or in public, or any public forum, thus bringing unjustified liability to this campus or anyone on this campus,
- Make demands on any governmental agency—or anyone else from HINU—while claiming to represent *The Indian Leader.*
- Attempt countermanding decisions of HINU personnel assigned by me or anyone else to positions in an effort to replace them,
- Record anyone at HINU in your interviews unless you advise them first and they grant you permission.

**You WILL:**

- Treat all faculty members, staff, and students with the highest respect.
- Conduct yourself as a student under the umbrella of Code of Conduct.
- Understand that no one has the obligation to answer your questions or adhere to any timelines you may attempt to impose on them.

*Id.* at ¶ 90.  Plaintiffs allege Dr. Graham "knowingly and purposely retaliated against Nally by subjecting him to a prior restraint on his protected expression, specifically by threatening disciplinary action if he continues to engage in protected activities specified in the Directive."

*Id.* at ¶ 208.  Dr. Graham rescinded the Directive via a January 13, 2021 letter.  *Id.* at ¶ 140-41.

Plaintiffs allege that, despite Dr. Graham's rescission of the Directive, Nally reasonably fears

similar retaliatory actions in the future.  *Id.* at ¶ 186.

### B.  Allegations Regarding The Indian Leader Association.

Plaintiffs allege Dr. Graham "knowingly and purposely retaliated against the Indian

Leader Association by refusing to complete the normal recognition process and thereby denying

the Indian Leader Association access to its Student Bank account, withholding more than

$10,000.00 in funds to which the Indian Leader Association is entitled, and also by targeting the

group with policy that removed its chosen faculty advisor."  *Id.* at ¶ 209.  Plaintiffs claim that

such "conduct has [] caused [them] difficulty in developing new content for *The Indian Leader*"

and had a chilling effect on their speech and other protected activities.  Plaintiffs allege that Dr.

Graham cannot identify any non-retaliatory reasons for these actions, and that a reasonable

person in his position would have known that such conduct violated the First Amendment.  *Id.* at

¶ 212.

### Rule 12(b)(6) Standard of review

A complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim

if there is a lack of a cognizable legal theory or there are insufficient facts alleged under a

cognizable legal theory.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012).

Applying the holdings in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v.

Iqbal*, 556 U.S. 662 (2009), the Tenth Circuit has stated that to withstand a motion to dismiss "a

complaint must have enough allegations of fact, taken as true, to state a claim to relief that is

plausible on its face."  *Kans. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir.

2011) (citation and internal quotation marks omitted).  While "a court must accept as true all of

the allegations contained in a complaint," this rule is "inapplicable to legal conclusions." *Id.*
(citation and internal quotation marks omitted). "[A] plaintiff must offer specific factual
allegations to support each claim. And . . . only a complaint that states a plausible claim for
relief survives a motion to dismiss. . . . [A] plaintiff must offer sufficient factual allegations to
raise a right to relief above the speculative level." *Id.* (citations and internal quotation marks
omitted).

"Determining whether a complaint states a plausible claim for relief [is] a context-
specific task that requires the reviewing court to draw on its judicial experience and common
sense." *Iqbal*, 556 U.S. at 679. "Thus, in ruling on a motion to dismiss, a court should disregard
all conclusory statements of law and consider whether the remaining specific factual allegations,
if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming*, 656 F.3d
at 1214.

## Analysis

Under their Third Cause of Action, Plaintiffs assert a *Bivens* cause of action against Dr.
Graham in his individual capacity for First Amendment violations.   In *Bivens*, the U.S. Supreme
Court implied a cause of action for damages directly under the Fourth Amendment against
federal law enforcement officers in their individual capacities based on an illegal warrantless
search and seizure in a home. *Bivens*, 403 U.S. at 388. Since then, a *Bivens* remedy has been
extended only twice by the Supreme Court. *See Davis v. Passman*, 442 U.S. 228 (1979)
(recognizing implied damages remedy for gender-discrimination claim under the Fifth
Amendment's Due Process Clause); *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing implied
damages remedy for deliberate indifference to prisoner's medical needs in violation of Eighth
Amendment).

In *Ziglar v. Abbasi*, 137 S. Ct 1843, 1857-60 (2017), the Supreme Court set out a two-step test for recognizing a *Bivens* cause of action for constitutional violations. *See also Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("When asked to extend *Bivens*, we engage in a two-step inquiry.") (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). The first step looks to whether the claim presents "a 'new context' or involves a 'new category of defendants.'" *Hernandez*, 140 S. Ct. at 743 (quoting *Malesko*, 534 U.S. at 68). "[A] case presents a new *Bivens* context" if it "is different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Abbasi*, 137 S. Ct. at 1859. If the claim presents a new *Bivens* context, the court must then "ask whether there are any 'special factors that counsel hesitation' about granting the extension." *Hernandez*, 140 S. Ct. at 743 (quoting *Abbasi*, 137 S. Ct. at 1857). A "special factor counseling hesitation," *Abbasi*, 137 S. Ct. at 1858, is simply a "warning flag[]" or "reason to pause" before implying a remedy. *Id.* at 743-44.

Here, as discussed below, Plaintiffs' First Amendment *Bivens* claims must be dismissed because they arise in a new context in which several special factors counsel hesitation. However, even if a *Bivens* remedy were available in this context, the Third Cause of Action should still be dismissed because Dr. Graham is entitled to qualified immunity.[3]

## I. The Court should not recognize a First Amendment *Bivens* claim in the novel context of a federally owned and operated tribal post-secondary institution.

Whether a *Bivens* cause of action exists against a federal official is a threshold question of law for the court. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (noting that the issue of whether to imply a *Bivens* remedy is "antecedent to the other questions presented"). "The

---

[3] Qualified immunity shields public officials from suit unless their conduct, as alleged, violated a clearly established constitutional or statutory right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Constitution does not ordinarily provide a private right of action for constitutional violations by federal officials." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 859 (10th Cir. 2016). However, a *Bivens* action is a limited, judicially created damages remedy for certain constitutional tort claims against certain federal employees. *See Bivens*, 403 U.S. at 397. No one enjoys an "automatic entitlement" to sue a federal official in his or her official capacity for damages based on an alleged constitutional violation. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Instead, only in certain limited circumstances may such a cause of action be implied.

In fact, in *Abbasi*, the Supreme Court "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). This is because expansion of *Bivens* to a new context is best left to Congress, not courts: "When a party seeks to assert an implied cause of action under the Constitution . . . separation-of-powers principles are . . . central to the analysis," and "[w]hen an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." *Id.* (internal quotations and citation omitted). "In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if 'the public interest would be served' by imposing a 'new substantive legal liability.'" *Id.*

Here, applying *Abbasi*'s two-step test for recognizing a *Bivens* remedy, Plaintiffs' *Bivens* claims necessarily fail because (1) they present a new context involving a federally owned and operated tribal university; and (2) there are special factors counseling against creating the remedy Plaintiffs seek.

**A. The proposed *Bivens* claim here presents a new context because the Supreme Court has never recognized a First Amendment *Bivens* claim, let alone a *Bivens* claim against the President of a federally owned and operated tribal university.**

Under the first step of the *Abbasi* test, the court must "inquire whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" *Hernandez*, 140 S. Ct. at 743. "The proper test for determining whether a case presents a new *Bivens* context" is whether it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court[.]" *Abbasi*, 137 S. Ct. at 1859.

A "context is new" when there is an extension, however "modest," of the three claims approved of in the only cases in which the Supreme Court has accepted a *Bivens* claim other than *Bivens* itself: *Davis*, 442 U.S. at 228, or *Carlson*, 446 U.S. at 14, both of which are discussed below. *See Abbasi*, 137 S. Ct. at 1859, 1864; *Hernandez*, 140 S. Ct. at 743 ("[O]ur understanding of a 'new context' is broad."). "[D]ifferences that are meaningful enough to make a given context a new one," include: an officer's rank; the constitutional right at issue; the generality or specificity of alleged conduct; the extent of judicial guidance as to how an official should respond to the matter; the legal mandate under which the official was operating; the risk of intrusion by the judiciary into the functioning of other branches of government; or the presence of other special factors not considered in previous *Bivens* cases. *Abbasi*, 137 S. Ct. at 1859-60.

Here, Plaintiffs' proposed First Amendment *Bivens* claim presents a new context for several reasons. To begin, the constitutional right at issue is different from any of the Supreme Court's prior *Bivens* cases. The Supreme Court has recognized the availability of *Bivens* actions in only three discrete factual scenarios. First, in *Bivens* itself, the Court found an implied cause of action to enforce Fourth Amendment search and seizure rights against line-level FBI officers who searched plaintiff's home and arrested him without a warrant. *Bivens*, 403 U.S. at 389–90. Second, in *Davis*, the Court found an implied cause of action under the Fifth Amendment's Due

Process Clause that allowed an administrative assistant to sue a Congressman for firing her because of her gender.  442 U.S. at, 248–49.  Finally, in *Carlson*, the Court found an implied cause of action under the Eighth Amendment that allowed a federal prisoner's estate to sue prison guards for failing to treat the decedent's asthma.  446 U.S. at 19.

Aside from these specific fact patterns, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants."  *Malesko*, 534 U.S. at  68; *Big Cats*, 843 F.3d at 859 (noting the Supreme Court "has steadfastly retreated from a broad application of [*Bivens*], refusing to extend implied causes of action to other constitutional provisions, and cabining the contexts in which it will allow Bivens claims to proceed").  "And for almost 40 years, [the Supreme Court has] consistently rebuffed requests to add to the claims allowed under *Bivens*."  *Hernandez*, 140 S. Ct. at 743; *accord id.* at 741 (noting the Court "came to appreciate more fully the tension between this practice [of expanding *Bivens*] and the Constitution's separation of legislative and judicial power.").[4]  As is now clear, a *Bivens* remedy "is not an automatic entitlement" and is unjustified "in most instances."  *Wilkie*, 551 U.S. at 550.

---

[4]  *See Hernandez*, 140 S. Ct. at 750 (refusing *Bivens* remedy under Fourth and Fifth Amendments against border patrol agents who fatally shot Mexican teen on U.S.-Mexico border); *Abbasi*, 137 S. Ct. at 1860 (refusing *Bivens* remedy for due process and equal protection claims against high-level DOJ officials arising from post-9/11/2001 alien detention policies); *Minneci v. Pollard*, 565 U.S. 118, 124–25 (2012) (refusing *Bivens* remedy under Eighth Amendment against private prison guards); *Wilkie*, 551 U.S. at 547–50, 562 (refusing *Bivens* remedy for due process violations against Bureau of Land Management officials based on property ownership rights); *Malesko*, 534 U.S. at 61 (refusing *Bivens* remedy against private entity operating halfway house under contract with Bureau of Prisons); *FDIC v. Meyer*, 510 U.S. 471, 473–74 (1994) (refusing *Bivens* remedy for due process claims against federal agency for wrongful termination); *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (refusing *Bivens* remedy in procedural due process suit against Social Security Officials); *United States v. Stanley*, 483 U.S. 669, 671–72, 683–84 (1987) (refusing *Bivens* remedy in substantive due process suit against military officers); *Chappell v. Wallace*, 462 U.S. 296, 297, 304–05 (1983) (refusing *Bivens* remedy in race discrimination suit against military officers); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (refusing *Bivens* remedy in First Amendment suit against federal employer).

As demonstrated above, the Supreme Court has never recognized a First Amendment *Bivens* claim in any context.  *See Wood v. Moss*, 572 U.S. 744, 757 (2014); *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012); *Iqbal*, 556 U.S. at 675; *Bush*, 462 U.S. at 368.  After *Abbasi*, courts have been virtually unanimous in holding that First Amendment claims present a new context.[5]  *See Landis v. Martin*, No. 19-cv-177, 2020 WL 6797033, at *2 (S.D. Miss. Aug. 21, 2020) ("The trend in courts applying [*Abbasi*] to First Amendment claims has been to conclude that they may not be brought under *Bivens*."), *R. & R. adopted as modified*, 2020 WL 5270021 (S.D. Miss. Sept. 4, 2020).  That, alone, is enough for this Court to find new context here.

But even if it were not, this action undoubtedly involves a new "category of defendants." Plaintiffs seek to sue the former President of a federally owned and operated university.  The Supreme Court has never recognized a *Bivens* claim against the President of a federally owned and operated university (much less against the BIE more generally).

Moreover, none of the three Supreme Court *Bivens* cases involved a claim against a school administrator like Dr. Graham, who served under an appointment in the excepted service pursuant to 5 U.S.C. § 2103.  Finally, it is worth adding that *both* Nally and the Indian Leader Association assert *Bivens* claims here, even though the Supreme Court has never permitted a *Bivens* claim by a non-individual such as the Indian Leader Association.  *See, e.g., Life Savers*

---

[5]  *See, e.g., Loumiet v. United States*, 948 F.3d 376, 385 (D.C. Cir. 2020) (declining *Bivens* remedy arising from an allegedly retaliatory administrative enforcement action); *Mack v. Yost*, 968 F.3d 311, 325 (3d Cir. 2020) (declining inmate's workplace assignment retaliation claim); *Buenrostro v. Fajardo*, 770 F. App'x 807, 808 (9th Cir. 2019) (declining inmate's retaliation claim); *Petzold v. Rostollan*, 946 F.3d 242, 252 & n.46 (5th Cir. 2019) (noting it is "unlikely" *Bivens* extends inmate retaliation claim arising from SHU placement); *Bistrian v. Levi*, 912 F.3d 79, 95 (3d Cir. 2018) (holding same); *Vanderklok v. United States*, 868 F.3d 189, 209 (3d Cir. 2017) (declining retaliatory prosecution claim); *but cf. Boule v. Egbert*, 980 F.3d 1309, 1313–17 (9th Cir. 2020) (finding "First Amendment claim arises in a new context," but no special factors counselled against extending *Bivens* to retaliation claim against border patrol agents who asked IRS to investigate citizen who operated an inn at the border).

*Concepts Ass'n of Cal. v. Wynar*, 387 F. Supp. 3d 989, 998–99 (N.D. Cal. 2019) ("Thus, because *Bivens*, *Davis*, and *Carlson* do not involve a corporate entity seeking to assert a *Bivens* action on behalf of employees, the instant case presents a new *Bivens* context.").  Thus, in addition to the constitutional right at issue and the category of defendant, at least two other "meaningful differences" are present—the legal mandate under which Dr. Graham operated as an excepted service appointee, and the fact that an *entity* such as the Indian Leader Association is seeking to assert a *Bivens* remedy on behalf of its members.

Having demonstrated that Plaintiffs' proposed claim seeks to extend *Bivens* to a new context, the Court "must proceed to the next step and ask whether there are factors that counsel hesitation" against recognizing such a novel remedy.  *Hernandez*, 140 S. Ct. at 744.

### B.  Special factors counsel against extending *Bivens* to this new context.

Under the second step of the *Abbasi* test, the inquiry is whether "special factors" counsel against implying a damages action based on a constitutional violation.  This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Abbasi*, 137 S. Ct. at 1857-58.  "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," then the Judiciary should defer and allow Congress to play its proper role.  *Id.* at 1858.

The Supreme Court has considered several special factors counseling hesitation in extending *Bivens* to the context at issue.  For example, in *Abbasi*, the Court emphasized that "an alternative remedial structure . . . alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."  *Id.*  Other special factors include whether a *Bivens* action would require courts to interfere with sensitive governmental functions; *id.* at 1863; whether Congress has regulated

extensively in the field without creating a damages remedy, *id.* at 1849; whether the court can define a "workable cause of action" that does not require difficult line-drawing, *Wilkie*, 551 U.S. at 555-57; and whether a new *Bivens* action would invite an onslaught of litigation, *id.* at 562.

Here, in the context of a federally owned and operated tribal university, a number of special factors, both related and independent, counsel hesitation before extending *Bivens* to Plaintiffs' First Amendment retaliation claims.

### i.     Alternative existing processes foreclose a *Bivens* remedy here.

As noted above, "if there is an alternative remedial structure present in a certain case, that *alone* may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1858 (emphasis added). "For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* (quoting *Wilkie*, 551 U.S. at 550); *see also Big Cats*, 843 F.3d at 859 ("[W]here Congress has already constructed a 'constitutionally adequate' alternative remedy for federal misconduct, courts ought not step in by implying a *Bivens* cause of action."). "So long as the plaintiff had an avenue for *some* redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability." *Malesko*, 534 U.S. at 69 (emphasis added); *accord Schweiker*, 487 U.S. at 423, 425 (noting that alternative processes need not provide "complete relief" so long as they provide "adequate remedial mechanisms for constitutional violations"). "'Alternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018).

Here, if Nally's challenge to the actions of the defendants is successful under the Administrative Procedures Act (APA), he clearly has an alternative remedy. Nally also has an

alternative avenue for relief under HINU's Code of Student Conduct, which establishes a "Student Grievance Process," under which Mr. Nally may file a complaint against any "person, service, or process that requires clarification, investigation, and resolution," and receive "a prompt, impartial, and fair hearing of [his] complaint[]." Haskell Indian Nations University, Student Code of Conduct, https://www.haskell.edu/wp-content/uploads/2021/05/2021.05.20-Revised-Haskell-Code-of-Student-Conduct-2-1.pdf. The fact that Nally chose not to avail himself of this process, or that he may claim that such process was biased or unsatisfactory for whatever reason, does not change the fact that it satisfies the *Bivens* analysis as an alternative remedy to the creation of a new *Bivens* cause of action. *See Abbasi*, 137 S. Ct. at 1865 (declining to recognize a *Bivens* remedy under the second step of the *Abbasi* test because there were alternative remedies that "*might* have been" available to the plaintiffs) (emphasis added).

Although the Student Grievance Process provides Mr. Nally with an *administrative*, as opposed to a *judicial*, remedy, the Court has clarified that "an alternative remedial structure" includes both judicial and administrative remedies. *See Malesko*, 534 U.S. at 74 ("Inmates in respondent's position also have full access to remedial mechanisms established by the [Bureau of Prisons], including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program."). The remedy need not be a cause of action; it may just be a "process" like the one outlined in the Code of Student Conduct. *See Wilkie*, 551 U.S. at 550 ("In the first place, there is the question whether any alternative, existing *process* for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.") (emphasis added).

In *Bivens*, the Supreme Court created an implied remedy, in part, because the plaintiff in that case had no other avenue to seek relief; for the plaintiff in *Bivens*, it was "damages or

nothing." *Bivens*, 403 U.S. at 410 (Harlan, J. concurring).  That is not the case for Plaintiffs, who have a meaningful alternative process under the HINU Code of Student Conduct to seek redress for their claims.  It is of no consequence that Plaintiffs cannot receive damages through this process.  *See Abbasi*, 137 S. Ct. at 1865 ("[T]he *existence* of alternative remedies usually precludes a court from authorizing a Bivens action." (emphasis added)).  Plaintiffs have "the means to be heard" and "the Judiciary [should] stay its *Bivens* hand."  *See Wilkie*, 551 U.S. at 552, 554.

> ii.    **Other special factors counsel hesitation in extending *Bivens* to this new context.**

Even if Plaintiffs had no alternative remedy, the Court should still refrain from extending *Bivens* as there are other "special factors counseling hesitation." *Id*. at 550.  Taken together, the "special factors" present in this case more than suffice to "cause a court to hesitate" before extending *Bivens* into the new context presented in Plaintiff's claims.  *Abbasi*, 137 S. Ct. at 1858.  Those factors include  (1) legislative activity in the area of Indian education; (2) separation-of-powers concerns; and (3) other practical concerns, including system-wide costs and the difficulty in creating a workable cause of action.

> (1)    **Congressional action in the context of Indian education has been frequent and intense; yet, Congress has never provided a *Bivens* remedy.**

The Supreme Court instructs courts to refrain from extending *Bivens* if "legislative action suggest[s] that Congress does not want such a remedy in a given context."  *Abbasi*, 137 S. Ct. at 1865.  And, as "in any inquiry respecting the likely or probable intent of Congress, the *silence* of Congress is relevant."  *Id.* at 1862.  Here, the silence is telling as Congress has never created a damages remedy against HINU officials like Dr. Graham despite its "frequent and intense" interest in the administration of BIE-owned and operated schools.  *Id* (noting that "Congress'

failure to provide a damages remedy might be more than mere oversight, and [its] silence might be more than 'inadvertent,'" in this setting, where "Congressional interest has been 'frequent and intense'" (citing *Schweiker*, 487 U.S. at 423-25)).

Congress has enacted numerous statutes authorizing the BIE to provide for Indian education. *See, e.g.*, Snyder Act, 42 Stat. 208 (1921); 25 U.S.C. § 13; Johnson-O'Malley Act, 48 Stat. 596; 25 U.S.C. § 452 *et seq.*; 25 U.S.C. § 631 *et seq.* In the Native American Education Improvement Act, Congress established federal standards for and in support of Indian education, "declar[ing] that the Federal Government has the sole responsibility for the operation and financial support of the Bureau of Indian Affairs funded school system that it has established," and that "[i]t is the policy of the United States to fulfill the Federal Government's unique and continuing trust relationship with and responsibility to the Indian people for the education of Indian children and for the operation and financial support of the Bureau of Indian Affairs-funded school system." 25 U.S.C. § 2000.

Congress has not only legislated in the area of BIE-funded schools generally, but also with respect to HINU specifically. In 1998, Congress enacted the Haskell Indian Nations University and Southwestern Indian Polytechnic Institute Administrative Systems Act of 1998, which authorized HINU to implement demonstration projects aimed at improving personnel management policies and practices. Pub. L. No. 105-337, 112 Stat. 3171. In its findings, Congress stated its intent to "giv[e] a greater degree of autonomy to [HINU and the Southwestern Indian Polytechnic Institute], while maintaining them as an integral part of the Bureau of Indian Affairs." *Id.*

Notably missing from these various legislative actions is the individual-capacity remedy Plaintiffs seek. In *Abbasi*, the Court recognized that Congress's failure to provide a damages

remedy is both "relevant" and "telling" when Congress has regulated extensively, or paid

particular attention to, a specific arena.  137 S. Ct. at 1862.  Accordingly, "it is much more

difficult to believe" that Congress' omission of a remedy for HINU students "was 'inadvertent.'"

*Id*. at 1862 (quoting *Schweiker*, 487 U.S. at 426).  Such silence underscores that Congress would

not "want the Judiciary to interfere" with the statutory scheme governing BIE-funded schools by

creating a constitutional remedy for HINU students through *Bivens*.  *Id*. at 1858.

### (2)   Separation-of-powers counsel against judiciary intervention with the operation of BIE-owned and operated schools.

Another reason to refrain from creating a new remedy in this context is the risk that doing

so would "trench[] on matters committed to the other branches."  *Id*. at 1861.  "When a party

seeks to assert an implied cause of action under the Constitution itself, . . . separation-of-powers

principles are or should be central to the analysis."  *Id*. at 1857.

Here, Congress has delegated substantial authority to the Secretary of the Department of

the Interior and her subordinate agencies to implement all statutes involving Indians.  *See Cal.*

*Valley Miwok Tribe v. United States*, 515 F.3d 1262, 1267 (D.C. Cir. 2008) (noting that pursuant

to 25 U.S.C. § 2, the Secretary "has the power to manage '*all* Indian affairs and [] *all* matters

*arising out of Indian relations*.' . . . We have previously held that this extensive grant of

authority gives the Secretary broad power to carry out the federal government's unique

responsibilities with respect to Indians.") (citing *Udall v. Littell*, 366 F.2d 668, 672 (D.C. Cir.

1966)).  Congress' broad delegation of authority is codified in 25 U.S.C. § 2, which provides that

"[t]he Commissioner of Indian Affairs[6] shall, under the direction of the Secretary of the Interior .

---

[6] The Secretary of the Interior created the office of the Assistant Secretary – Indian Affairs in 1977, via Secretarial Order 3010, published at 42 Fed. Reg. 53,682 (Oct. 3, 1977).  The Order directed that the AS-IA "will assume all the authorities and responsibilities of the Commissioner of Indian Affairs pending subsequent organization and position realignments."

. . have the management of *all Indian affairs* and of *all matters arising out of Indian relations*," 25 U.S.C. § 2 (emphasis added).  Similarly, 25 U.S.C. § 9 states that "[t]he President [or executive agencies] may prescribe such regulations as he may think fit for carrying into effect the various provisions of *any act relating to Indian affairs*."  25 U.S.C. § 9 (emphasis added).

For matters relating to Indian education, the Assistant Secretary for Indian Affairs has been vested with the authority to perform "all functions with respect to formulation and establishment of policy and procedure and supervision of programs and expenditures of Federal funds for the purpose of Indian education administered by the Bureau [of Indian Education]."  25 U.S.C. § 2006.  In 25 U.S.C. § 2006(b)(1), Congress expressly delegated to the BIE the authority to "direct and supervise the operations of all personnel directly and substantially involved with provision of education services by the Bureau."

Through numerous statutes, Congress has consistently and expressly deferred to the Executive Branch regarding how best to administer federal programs and services affecting Indian education.  Allowing Plaintiffs' *Bivens* claim to proceed here would intrude into the functioning of the Executive's congressionally delegated duty to manage BIE-funded schools. *See Turner v. Safley*, 482 U.S. 78, 84-85 (1987) ("Prison administration is, moreover, a task that has been committed to the responsibility of [the legislative and executive] branches, and separation of powers concerns counsel a policy of judicial restraint.").  The potential for a *Bivens* remedy such as Plaintiffs' to interfere with quintessential "sensitive functions of the Executive Branch," is a standalone reason against implying a novel damages claim in this case.  *Abbasi*, 137 S. Ct. at 1861.

### (3) Additional Practical Concerns Counsel Hesitation.

In addition to these concerns is the impact that recognizing Plaintiffs' *Bivens* claim could have "on governmental operations systemwide." *Abbasi*, 137 S. Ct. at 1858. In *Abbasi*, the Court instructed courts to consider whether it is "necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens." *Id.* This includes not only the burdens on individual officers, but also "projected costs and consequences to the Government itself." *Id.*

Here, extending *Bivens* to First Amendment retaliation claims like Plaintiffs' may invite an "onslaught of *Bivens* actions," *Wilkie*, 551 U.S. at 562, and "open the floodgates to litigation in this sphere." *Mack v. Yost*, 968 F.3d 311, 325 (3d Cir. 2020). Retaliation claims are "easy to allege and difficult to prove," which means they are "'easily fabricated' and cannot be readily dismissed on the pleadings." *Id.* at 324-25. Extending *Bivens* to this new context could "clog the courts," *Id.* at 325, require the United States to invest tremendous time and resources to the defense of First Amendment *Bivens* claims,[7] and inhibit BIE administrators "from devoting the time and effort required for the proper discharge of their duties." *Abbasi*, 137 S. Ct. at 1860.

---

[7] Plaintiffs may suggest that claims against certain federal defendants are barred by other immunities. As but one example, although absolute immunity bars claims for money against judges for their case-related activities, the United States still dedicates substantial time and resources to the defense of meritless monetary claims against the judiciary. *See.,e.g., Akers v. Flannigan*, No. 21-2042-HLT, 2021 WL 2104976 (D. Kan. May 25, 2021) (Akers, a litigious inmate, baselessly sues federal prosecutor and three federal judges in state court for $75,000,000; United States removes the case to federal court and then Judge Teeter grants the United States' motion to dismiss in part based up judicial immunity, denies Akers' motion to dismiss and remand the case to state court, and denies Akers' invective motion for Rule 11 sanctions against counsel for the United States); *United States v. Akers*, No. CR 04-20089-01-KHV, 2019 WL 5864789, at *1–2 (D. Kan. Nov. 8, 2019) (collecting several frivolous cases filed by Akers against federal judges and other federal employees).

That is, rather than availing themselves of internal administrative dispute resolution mechanisms, any BIE student could proceed immediately to federal court to seek ruinous levels of damages against school administrators or faculty in their individual capacities. There is no evidence that Congress or the courts would seek to subject school staff to *Bivens* liability in this manner.

There are also the practical difficulties of extending *Bivens* to a sensitive area such as education administration, where administrators are tasked with making judgment calls in real time. To maintain order in their schools, administrators need to be able to react quickly without fear that every decision could subject them to a personal suit for damages. The concern here is that officials "who face personal liability for damages might refrain from taking urgent and lawful action in a time of crisis." *Abbasi*, 137 S. Ct. at 1863; *see also Vanderklok*, 868 F.3d at 207 ("The threat of damages liability could indeed increase the probability that a TSA agency would hesitate in making split-second decisions about suspicious passengers."). Imposing *Biven*s liability in this context could thus undermine their ability to maintain order in their schools. *See Pinson v. U.S. Dep't of Justice*, No. 12-1872, 2021 WL 790380, at *7 (D.D.C. Jan. 8, 2021) (finding that "the fear of [individual capacity] suits and the efforts needed to defend against them may detract from an officer's ability to properly fulfill his duties to the federal government").

Another special factor counseling hesitation is "the serious difficulty of devising a workable cause of action" for Plaintiffs' First Amendment retaliation claims. *Wilkie*, 551 U.S. at 562. If recognized, Plaintiffs' *Bivens* claim would require courts to determine if, as alleged here, the government official acted "knowingly and purposely" in retaliating against Plaintiffs. ECF. No. 1 ¶ 208-09. *See also United States v. Stanley*, 483 U.S. 669, 701 (1987) (Brennan, J., concurring in part) (explaining that "*Bivens* involves not negligent acts, but *intentional*

constitutional violations that must be deterred and punished.") (emphasis added).  Yet, as with

any allegation of "an official's state of mind," such claims are "easy to allege and hard to

disprove."  *Crawford-El v. Britton*, 523 U.S. 584-85 (1998).  Thus, in this context, there is reason

to "fear that a general *Bivens* cure would be worse than the disease."  *Wilkie*, 551 U.S. at 561.

Taken together, these special factors counsel against the extension of *Bivens* in this case.

The Court should accordingly decline to extend *Bivens* to Plaintiffs' First Amendment claims

and dismiss the Third Cause of Action for failure to state a claim.

## II. Even assuming a First Amendment violation, Dr. Graham in entitled to qualified immunity.

Even if Plaintiffs' *Bivens* claim is not barred by the many factors counseling hesitation

detailed above, their Third Cause of Action should still be dismissed because Dr. Graham is

entitled to qualified immunity.  The doctrine of qualified immunity protects government officials

from liability for civil damages as long as their conduct does not violate clearly established

constitutional rights that a reasonable person would have known.  *Pearson v. Callahan*, 555 U.S.

223, 231 (2009).  This doctrine developed as a way to balance "two important interests—the

need to hold public officials accountable when they exercise power irresponsibly and the need to

shield officials from harassment, distraction, and liability when they perform their duties

reasonably."  *Id.*  Qualified immunity is "immunity from suit rather than a mere defense to

liability."  *Id.* at 237 (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Courts should

resolve qualified immunity questions "at the earliest possible stage in litigation."  *Id.* at 231.

The Supreme Court has "mandated a two-step sequence for resolving government

officials' qualified immunity claims."  *Callahan*, 555 U.S. at 232.  First, a court must decide

whether plaintiff has alleged facts sufficient to support a violation of a constitutional right.  *Id.*

Second, if plaintiff satisfies this first step, the court must determine whether the right at issue was

"clearly established" at the time of defendant's misconduct. *Id.* To show a violation of a clearly established constitutional right, the plaintiff must show "a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Brown v. The City of Colorado Springs*, No. 16-1206, 2017 WL 4511355, at *8 (10th Cir. Oct. 10, 2017) (*quoting Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (brackets in original) (*quoting Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

In determining whether the law is clearly established, "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *Anderson v. Recore*, 317 F.3d 194 (2d Cir. 2003) (internal citations, quotations and alterations omitted); *see Dodds v. Richardson,* 614 F.3d 1185, 1206 (10th Cir. 2010) ("The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains."). "The precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (internal quotation and emphasis omitted).

The Supreme Court has "repeatedly told courts ... not to define clearly established law at a high level of generality." *Ashcroft v. al–Kidd,* 563 U.S. 731, 742 (2011); *see Brown*, 2017 WL 4511355 at *1 (the clearly established law must be particularized to the facts of the case and may not be defined at a high level of generality) (quotations omitted). "The key to the analysis is notice—an official somehow must be on notice that the conduct in question could violate the plaintiff's constitutional rights." *DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001). A case

"directly on point" is not necessary, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al–Kidd*, 563 U.S. at 731). In this regard, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

Here, even assuming that Dr. Graham's actions constitute a First Amendment violation that would give rise to a cognizable *Bivens* claim, Dr. Graham is entitled to qualified immunity because the constitutional right at issue was not clearly established at the time of the events in question. Plaintiffs allege two factual bases for their First Amendment retaliation claim against Dr. Graham. First, they allege that Dr. Graham "knowingly and purposely retaliated against the Indian Leader Association" by imposing certain administrative and financial hurdles to the recognition and operation of *The Indian Leader*. ECF No. 1 ¶ 209. To establish a claim for First Amendment retaliation, Plaintiffs must show that (1) they were engaged in constitutionally protected activity; (2) defendant's actions caused plaintiffs to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) plaintiffs' exercise of constitutionally protected activity substantially motivated defendants' adverse action. *See Van Deelen v. Johnson*, 497 F.3d 1151, 1155-56 (10th Cir. 2007); *Worrell v. Henry*, 219 F.3d 1197, 1212-13 (10th Cir. 2001). To satisfy the causation link, a plaintiff must allege that a retaliatory motive was a "but for" cause of the defendant's retaliatory action. *See Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990).

Plaintiffs cannot satisfy the third element with evidence of retaliatory motive. The Complaint describes Plaintiffs' various journalistic activities, the events leading up to the Directive, and the alleged retaliatory acts against the Indian Leader Association, but fails to

establish a causal connection between Plaintiffs' protected speech and the alleged retaliatory acts. There is nothing to connect these events except their temporal proximity, and "[t]iming alone does not create an inference that the [adverse action] is retaliatory." *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 605 (5th Cir. 2001). The timing of the alleged adverse actions against *The Indian Leader*, without more, is insufficient to establish Plaintiffs' protected activity as a motivating factor. Because the Complaint fails to allege sufficient facts to show that Plaintiffs' protected conduct was the "but for" cause of any adverse action taken against them, Plaintiffs have not plausibly alleged that Dr. Graham, through his own actions against the Indian Leader Association, violated the First Amendment.

Second, Plaintiffs allege Dr. Graham "knowingly and purposely retaliated against Nally" by threatening disciplinary action via the Directive. Dr. Graham is entitled to qualified immunity because the constitutional right at issue was not clearly established at the time the Directive was issued. In their Complaint, Plaintiffs allege that Dr. Graham engaged in retaliation actions in response to certain "activities that drew President Graham's ire," ECF No. 1 ¶ 47, including Nally's off-campus submission of public comments to the Community Police Review Board and recording of a conversation he had with a HINU financial aid officer. *Id.* at ¶¶ 56, 61. Neither the Supreme Court[8] nor the Tenth Circuit has decided the specific issue of whether universities can sanction off-campus speech activities that violate the student code of conduct. There are no cases with facts sufficiently similar to those here such that a reasonable school official in Dr.

---

[8]   The Supreme Court recently granted certiorari and heard oral arguments on the question of whether *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), applies to off-campus student speech. *See Mahanoy Area Sch. Dist. v. B.L.*, No. 20-255 (U.S.). However, the Court granted certiorari on January 8, 2021, *after* Dr. Graham issued the Directive on October 16, 2020. For purposes of the qualified immunity analysis, the law must be "clearly established" at the time the action was taken. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Graham's shoes would know that his or her conduct with respect to Nally was unconstitutional and that his actions would expose him to potential personal liability under *Bivens.*

Because Plaintiffs' First Amendment retaliation claim against Nally with respect to the Directive is without precedent, and they have not alleged a plausible First Amendment retaliation claim with respect to the Indian Leader Association, Dr. Graham is entitled to qualified immunity for all claims arising under the Third Cause of Action.

## Conclusion

For the foregoing reasons, this Court should dismiss the individual-capacity claims asserted against Dr. Graham pursuant to Rule 12(b)(6) for failure to state a claim.

Respectfully submitted,

DUSTIN J. SLINKARD
Acting United States Attorney
District of Kansas

*s/ Terra D. Morehead*
Terra D. Morehead
Assistant United States Attorney
Ks. S. Ct. No. 12759
500 State Ave., Suite 360
Kansas City, KS 66101
Tele: (913) 551-6730
Fax: (913) 551-6541
E-mail: terra.morehead@usdoj.gov

*s/ Christopher Allman*
CHRISTOPHER ALLMAN
Assistant United States Attorney
Ks. S. Ct. No. 14225
500 State Avenue, Suite 360
Kansas City, Kansas 66101
Tele: (913) 551-6730
Fax: (913) 551-6541
Email: chris.allman@usdoj.gov

Attorneys for Defendants

24

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 1, 2021, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of filing to all CM/CMECF participants for this case.

s/ Christopher Allman
CHRISTOPHER ALLMAN
Assistant United States Attorney
