IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JARED NALLY and<br>THE INDIAN LEADER ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>RONALD J. GRAHAM, in his individual and official capacity as President of Haskell Indian Nations University,<br><br>HASKELL INDIAN NATIONS UNIVERSITY,<br><br>TONY L. DEARMAN, in his official capacity as Director of the Bureau of Indian Education, and<br><br>BUREAU OF INDIAN EDUCATION,<br><br>Defendants. | No. 21-2113-JAR-TJJ |

**MEMORANDUM IN SUPPORT OF FEDERAL
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION ON CLAIMS 4 AND 5**

On May 19, 2021, Plaintiffs Jared Nally ("Nally") and the Indian Leader Association filed a Motion for Preliminary Injunction on Claims 4 and 5 ("Motion"). The Motion asked this Court to enjoin Defendants Haskell Indian Nations University ("HINU"), Ronald J Graham, in his official capacity, Tony L. Dearman, in his official capacity, and Bureau of Indian Education ("BIE"), (collectively, "Federal Defendants"), from enforcing the Campus Expression Policy contained in the Haskell Indian Nations University Code of Conduct ("Code of Conduct").

This Court should deny Plaintiffs' Motion. First, HINU has permanently repealed the Campus Expression Policy. Accordingly, no live controversy or case remains with respect to Claims 4 and 5: there is nothing to enjoin, and no further relief for Plaintiffs to pursue in this

Court regarding the Campus Expression Policy. Plaintiffs cannot show any likelihood of success on the merits because Claims 4 and 5 are moot.

Second, even if Claims 4 and 5 were not moot, Plaintiffs are not entitled to injunctive relief because they face no likelihood of irreparable harm. There is no Campus Expression Policy that Federal Defendants can or would enforce, and as a result, Plaintiffs face no harm of any kind that an injunction could restrain. The relief Plaintiffs seek—restraining Federal Defendants from enforcing the Campus Expression Policy—is not necessary to prevent any likelihood of imminent irreparable harm.

The Court should therefore deny Plaintiffs' Motion for Preliminary Injunction on Claims 4 and 5.

## Background

On March 2, 2021, Plaintiffs filed a Complaint against HINU, BIE, BIE Director Tony L. Dearman in his official capacity, and then-HINU President Dr. Graham in both his official[1] and individual capacities. *See* ECF No. 1. The Complaint alleges seven separate causes of action. *See* ECF No. 1 ¶¶ 172-274. Relevant here are Plaintiffs' fourth and fifth causes of action, which challenge the Campus Expression Policy as unconstitutionally overbroad and facially vague. *See id.* at ¶¶ 218-51. The challenged Campus Expression Policy contained in the now-repealed version of the Code of Student Conduct states: "Discussion and expression of all views is permitted, consistent with Haskell's CIRCLE values and subject only to requirements for the maintenance of order." *Id.* at ¶ 39. The Code of Conduct defines the "CIRCLE values" as follows:

---

[1] On May 7, 2021, Dr. Ronald Graham resigned from his position as HINU President. Dr. Tamarah Pfeiffer is currently Acting as HINU President. *See* https://www.haskell.edu/presidents-office/administration/.

**Communication**

> To successfully convey ideas, opinion, information, results, images and creative expression using multiple strategies for diverse groups and stakeholder.

**Integrity**

> To conduct ourselves in ways that honor the sacrifices of our tribes on which treaty and trust responsibilities are based; and to carry out our responsibilities as students, staff, faculty, administrators, and regents by engaging in action based on the highest standard of conduct.

**Respect**

> To honor and promote the diversity of beliefs, rights, responsibilities, cultures, accomplishments of self and others, including our non-human relations.

**Collaboration**

> The willingness and ability to work successfully with others to accomplish the goals of the university and to meet the needs of our students, the tribes we represent and serve as well as our mission.

**Leadership**

> The willingness to acquire the knowledge and skills required to advocate for, and to advance the sovereignty and self-determination of tribes, Haskell and the students.

**Excellence**

> To strive toward the strongest level of accomplishment in our respective roles on behalf of Haskell, as students, staff, faculty, administration, and the Board of Regents.

*Id.* at ¶ 37.

Plaintiffs' fourth cause of action alleges that the Campus Expression policy is "unconstitutionally broad on its face because it allows Defendants to punish a broad range of protected speech," and "circumscribes students' First Amendment rights by requiring adherence to subjective CIRCLE values." *Id.* at ¶ 221-22. Plaintiffs argue Defendants "cannot restrict the

3

right to free expression by making [the Campus Expression policy] contingent on compliance with subjective CIRCLE values, like integrity and respect." *Id.* at ¶ 223. Plaintiffs' fifth cause of action alleges the Campus Expression policy is "unconstitutionally vague because it fails to give ordinary students fair notice of what expression complies with subjective CIRCLE values," thereby "encourag[ing] arbitrary and erratic enforcement. *Id.* at ¶ 239-40. On May 19, 2021, Plaintiffs filed a Motion for Preliminary Injunction on Claims 4 and 5, "request[ing] that this Court preliminarily enjoin Defendants from enforcing the portion of the Campus Expression Policy that makes students' expressive rights contingent upon compliance with the CIRCLE values." ECF No. 13 at ¶¶ 2-3.

However, on May 21, 2021, the HINU Faculty Senate, Student Senate, Vice President of University Services, and Acting President Tamarah Pfeiffer approved amendments to the Code of Student Conduct repealing the Campus Expression Policy in its entirety and clarifying that the CIRCLE values "are *aspirational* and reflect Haskell's ideals for the conduct of Haskell students, faculty, administrators, and the Board of Regents."[2] Revised Code of Student Conduct, at 7 (emphasis added). HINU also affirmed its commitment to protecting the First Amendment rights of its students by adopting the following "Free Expression Statement":

> **I. Free Expression Statement**
>
> Haskell is committed to protecting the right to freely communicate ideas and fully supports the freedom of all members of the Haskell community to engage

---

[2] The public version of the revised Code of Student Conduct ("Revised Code of Student Conduct"), which can be found at *https://www.haskell.edu/wp-content/uploads/2021/05/2021.05.20-Revised-Haskell-Code-of-Student-Conduct-2-1.pdf*, is attached hereto as Exhibit A. The Court may take judicial notice of the Revised Code of Student Conduct as a government website posting. *See New Mexico ex rel Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 703 (10th Cir. 2009) (taking judicial notice of two federal agency websites); *see also Schmidt v. Int'l Playthings LLC*, No. CIV 19-0933, 2021 WL 1701883 (D.N.M. April 29, 2021); *Buhendwa v. Reg'l Transp. Dist.*, 82 F. Supp. 3d 1259, 1274 n.1 (D. Colo. 2015) (citing *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005)).

> in robust, uninhibited discussion and deliberation on any and all topics. However, freedom of expression at Haskell is not without limits. Haskell reserves the right to reasonably restrict student speech and conduct in accordance with longstanding Supreme Court precedent concerning on-campus speech, incitement, defamation, threats and harassment, and any other applicable subject area. Haskell will strive to implement any of these restrictions in a manner consistent with Haskell's foundational commitment to a free and open discussion of ideas.

*Id.* at 12.

The amendments to the Code of Student Conduct took effect on May 21, 2021. The revised Code of Student Conduct ("Revised Code of Student Conduct") was uploaded to HINU's website on May 24, 2021, and distributed via email to all HINU students, faculty, and staff that same day.

**Legal Standard**

To obtain a preliminary injunction, the moving party must show: (1) he is substantially likely to succeed on the merits; (2) he will suffer irreparable injury if the injunction is denied; (3) his threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *See State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021). "A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). "A party may be granted a preliminary injunction only when monetary or other traditional legal remedies are inadequate, and 'the right to relief is clear and unequivocal.'" *DTC Energy Grp., Inc. v. Hirschfield*, 912 F.3d 1263, 1270 (10th Cir. 2018) (citation omitted).

The "limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395

(1981)). For that reason, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") applies a heightened standard for "[d]isfavored preliminary injunctions," which do not:

> [M]erely preserve the parties' relative positions pending trial. Instead, a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it); (2) it changes the status quo; or (3) it grants all the relief that the moving party could expect from a trial win. To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor.

*Free the Nipple*, 916 F.3d at 797 (citations and internal quotation marks omitted). Such disfavored injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc).

In their Motion, Plaintiffs seek to enjoin Federal Defendants from enforcing the Campus Expression Policy. *See* ECF No. 13 at 1. Because Plaintiffs seek to change the status quo and will receive substantially all the relief they seek in the case if their Motion is granted,[3] Plaintiffs seek a disfavored injunction. To succeed on their motion, therefore, Plaintiffs must meet heightened "strong showing" standards applicable to disfavored injunctions. *See Kansas v. United States Dep't. of Interior*, No. 2:20-cv-02386-HLT-GEB, 2020 WL 6868776, at *5 (D. Kan. Nov. 23, 2020).

**Analysis**

**I.     Plaintiffs cannot show any likelihood of success on the merits because Claims 4 and 5 are moot.**

---

[3] Plaintiffs' Prayer for Relief in the Complaint requests the same injunctive relief to "preliminarily and permanently enjoin[] enforcement of Defendants' Campus Expression policy contained in Haskell's Code of Student Conduct." ECF No. 1 at 50.

The likelihood of success on the merits is the "sine qua non" of the four-part preliminary injunction analysis: "if the [Plaintiffs] cannot demonstrate that [they are] likely to succeed . . . the remaining factors become matters of idle curiosity." *New Comm. Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). Here, the Court can begin and end its analysis with this factor alone. The fact that Plaintiffs' claims relating to the Campus Expression Policy have been rendered moot forecloses any possibility of demonstrating a likelihood of success on the merits. *See Whitington v. Zavaras*, No. 06-cv-00759-LTB-CBS, 2010 WL 2541125, at *5 (D. Colo. May 20, 2010) (concluding that plaintiff failed to demonstrate a sufficient likelihood of success on the merits based on finding of mootness); *see also Granite State Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002) (per curiam) ("In order to establish that there is a likelihood of success on the merits . . . the movant must establish that the case is not likely to be moot.").

The Tenth Circuit recognizes two kinds of mootness: constitutional mootness and prudential mootness. *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (citing *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010)). The constitutional mootness doctrine requires a suit to "present a real and substantial controversy with respect to which relief may be fashioned." *Jordan*, 654 F.3d at 1024. As the Tenth Circuit has stated, "[t]he crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (quoting *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)).

The doctrine of prudential mootness "'addresses not the *power* to grant relief[,] but the court's *discretion* in the exercise of that power,'" *Jordan*, 654 F.3d at 1024 (quoting *S. Utah*

7

*Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997)) (emphasis in original), and permits "'the court to stay its hand, and to withhold relief it has the power to grant.'" *Rio Grande Silvery Minnow*, 601 F.3d at 1121-22 (quoting *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997)). This doctrine "has particular applicability in cases . . . where the relief sought is an injunction against the government," *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997), and the government has already changed its policies or taken the requested action. *See, e.g.*, *id.* at 727; *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1525 (10th Cir. 1992).

"Under both [constitutional] and prudential mootness doctrines, the central inquiry is essentially the same: have circumstances changed since the beginning of litigation that forsestall any occasion for meaningful relief." *S. Utah Wilderness All.*, 110 F.3d at 727. When there is no reasonable expectation that the alleged violation will repeat itself, and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," *Rio Grande Silvery Minnow*, 601 F.3d at 1115 (quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979)), a case is moot "because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Davis*, 440 U.S. at 631. And, in the context of a request for preliminary injunction, where "the question the Court [] considers is not whether this entire case is constitutionally moot, but whether Plaintiffs' motion for a preliminary injunction is moot, the Court proceeds according to the doctrine of prudential mootness rather than constitutional mootness." *Hirt v. Unified Sch. Dist.*, No. 17-0cv-02279-JAR-GLR, 2017 WL 4776956, at *3 (D. Kan. Oct. 23, 2017); *see also Families and Youth Inc. v. Maruca*, 156 F. Supp. 2d 1245, 1250 (D.N.M. 2001) ("Courts generally invoke the prudential mootness doctrine in the context of a request for preliminary injunction . . . .").

Here, prudential considerations warrant denial of Plaintiffs' request for preliminary injunction because circumstances have rendered Claims 4 and 5 moot, making it impossible for Plaintiffs to receive any meaningful relief.  Under Claims 4 and 5, Plaintiffs challenge the Campus Expression Policy, alleging that it is unconstitutionally overbroad and vague on its face. *See* ECF No. 1 at ¶¶ 218-51.  Plaintiffs now seek to preliminarily enjoin Federal Defendants from enforcing the Campus Expression Policy. *See* ECF No. 13 at 1.  However, on May 21, 2021, the HINU Faculty Senate, Student Senate, Vice President of University Services, and Acting President Tamarah Pfeiffer, approved amendments to the Code of Student Conduct that, among other things, repealed the Campus Expression Policy and clarified that the right to free expression would not be contingent upon compliance with the CIRCLE values.  Since HINU has fully withdrawn and is not enforcing the Campus Expression Policy, no injunctive relief is available to Plaintiffs.

It is settled law that university polices become moot upon withdrawal. *See, e.g.*, *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (per curiam) (holding private university's "substantial[] amend[ment]" of challenged regulation mooted controversy over its validity); *Students for a Conservative Am. v. Greenwood*, 378 F.3d 1129, 1131 (9th Cir. 2004) (holding case moot "[b]ecause the University has withdrawn the challenged provisions and committed not to reenact them unless federal law changes"); *Coll. Standard Magazine v. Student Ass'n of State Univ. of N.Y. at Albany*, 610 F.3d 33 (2d Cir. 2010) (per curiam) (finding First Amendment claim was moot where student association of state university amended its constitution to require viewpoint-neutral distribution of university funds); *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 550 (4th Cir. 2010) (holding facial challenge to university policy was moot because "[i]f the policy was indeed facially overbroad, UMBC's permanent revisions cured this defect

and removed any threat of content-based enforcement in the future"). HINU's repeal of the Campus Expression Policy and amendments to the Code of Student Conduct have likewise "removed any threat" to Plaintiffs. The Revised Code of Student Conduct no longer contains the language challenged by Plaintiffs, and in fact sets out the free speech rights of HINU students in the precise manner prescribed by Plaintiffs. *See* ECF No. 3 at 5 (suggesting revisions to cure the alleged constitutional defects in the Campus Expression Policy, including revisions "to reflect that the university's CIRCLE values do not limit students' First Amendment rights," and "make clear that [the CIRCLE values] are merely aspirational and will no longer be invoked to punish students).

Likewise, there is no reasonable expectation that HINU will reinstitute the Campus Expression Policy at a later date. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004) (explaining that a request for prospective relief is mooted by a defendant's voluntary conduct if "it is 'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur'") (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.(TOC), Inc.*, 528 U.S. 167, 190 (2000)). HINU's repeal of the challenged Campus Expression Policy rests on a decision made not by a single administrator, but in collaboration with the HINU Faculty Senate, Student Senate, Vice President of University Services, and the Office of the President. Moreover, the Revised Code of Student Conduct replaces the Campus Expression Policy with a "Free Expression Statement," in which HINU commits "to protecting the right to freely communicate ideas" and the "freedom of all members of the Haskell community to engage in robust, uninhibited discussion and deliberation on any and all topics." Revised Code of Student Conduct, at 12. Through this statement, HINU has committed not to enforce any speech policy

that may run counter to "Haskell's foundational commitment to a free and open discussion of ideas." *Id.*

HINU's repeal of the Campus Expression Policy and other amendments thus render Plaintiffs' request for relief moot because the very action they demand—injunctive relief from the enforcement of the Campus Expression Policy—has already issued, and any injury Plaintiffs could allege based on the absence of this relief has been vitiated. *See, e.g.*, *Citizen Center v. Gessler*, 770 F.3d 900, 907 (10th Cir. 2014) ("Generally, an action becomes moot when someone challenges a regulation and it is repealed."); *Rio Grande Silvery Minnow*, 601 F.3d at 1116 ("[E]ven when a legislative body has the power to re-enact an ordinance or statute, ordinarily an amendment or repeal of it moots a case challenging the ordinance or statute."). Indeed, it is difficult to conceive of any benefit afforded Plaintiffs by an order of the Court prohibiting the enforcement of a nonexistent policy. Simply put, Plaintiffs cannot obtain any relief by their motion because Federal Defendants have already provided the relief requested by Plaintiffs.

Because Claims 4 and 5 are now moot, Plaintiffs cannot establish that they are likely to succeed on the merits for purposes of their preliminary-injunction motion. Plaintiffs' request for preliminary injunctive relief must accordingly be denied.

### II. Plaintiffs face no likelihood of irreparable harm.

Because Plaintiffs have failed to establish a likelihood of success on the merits, the Court need not address the other factors of the preliminary-injunction analysis. *See, e.g.*, *Dine Citizens Against Ruining our Env't v. Jewell*, 839 F.3d 1276, 1285 (10th Cir. 2016) ("We therefore affirm on this ground [failure to show substantial likelihood of success on the merits] and do not address the parties' arguments regarding the other three prerequisites for preliminary relief."); *Nova Health Sys. v. Edmonson*, 460 F.3d 1295, 1299 (10th Cir. 2006) (affirming district court's

denial of preliminary injunction without reaching other three factors because plaintiff failed to show a substantial likelihood of success on the merits). But even if the Court were to determine that Plaintiffs have demonstrated a likelihood of success on the merits, Plaintiffs still could not show that a preliminary injunction will prevent likely irreparable harm while the litigation proceeds.

Because "[t]he purpose of a preliminary injunction is not to remedy past harm," *Schrier*, 427 F.3d at 1267, the irreparable harm inquiry focuses on whether the plaintiff has demonstrated a "significant risk" that he or she will suffer irreparable injury before a court can render a final decision on the merits of the case. *See id.*; *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Speculation that Plaintiffs might again face harm someday is insufficient. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) ("Purely speculative harm will not suffice, but rather, [a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative.") (internal quotations and citation omitted); *see also Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 73 (1st Cir. 2004) ("Preliminary injunctions are strong medicine, and they should not issue merely to calm the imaginings of the movant.").

Here, Plaintiffs assert the Campus Expression Policy "causes irreparable injury by continuing to unconstitutionally restrict student expression while this lawsuit is pending." ECF No. 13 at 1. But the Campus Expression Policy is no longer in effect and poses no threat to Plaintiffs for the reasons discussed above. HINU's decision to withdraw the challenged Campus Expression Policy and enact a Revised Code of Student Conduct that does not include the challenged language eliminates any claim of present or future irreparable injury. Since the

Campus Expression Policy no longer exists, there can be no injury that an injunction would remedy.  Rather, HINU has eradicated the effects complained of in the Motion by repealing the Campus Expression Policy and enacting a Revised Code of Student Conduct that makes clear that the CIRCLE values are aspirational and will not be applied to limit the First Amendment rights of HINU students.  *See* Revised Code of Student Conduct, at 7.  There is nothing to suggest that HINU's amendments to the Code of Student Conduct were anything other than a genuine and good-faith effort to protect the First Amendment rights of its students.  *See Rio Grande Silvery Minnow*, 601 F.3d at 1117 (noting that "although governmental defendants might take action as a direct response to litigation, '[a]t any rate, self-correction again provides a secure foundation for mootness so long as it seems genuine'") (quoting 13C Charles Alan Wright, et al., Federal Practice and Procedure, § 3533.7 (2d ed. 2008)).

Plaintiffs have failed to show that they will suffer irreparable harm absent a preliminary injunction here.  The injunctive relief Plaintiffs seek would not prevent any irreparable harm because HINU has repealed the Campus Expression Policy and will not reinstate it—neither during the remaining course of this litigation, nor at any other time.

## Conclusion

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Preliminary Injunction on Claims 4 and 5.

Respectfully submitted,

DUSTON J. SLINKARD
Acting United States Attorney
District of Kansas

*s/ Terra D. Morehead*
Terra D. Morehead
Assistant United States Attorney
Ks. S. Ct. No. 12759
500 State Ave., Suite 360
Kansas City, KS 66101
PH: (913) 551-6730
FX: (913) 551-6541
Email: terra.morehead@usdoj.gov

*s/ Christopher Allman*
CHRISTOPHER ALLMAN
Assistant United States Attorney
Ks. S. Ct. No. 14225
500 State Avenue, Suite 360
Kansas City, Kansas 66101
PH: (913) 551-6730
FX: (913) 551-6541
Email: chris.allman@usdoj.gov

Attorneys for Federal Defendants

## CERTIFICATE OF SERVICE

      I hereby certify that on June 21, 2021, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of filing to all CM/CMECF participants for this case.

      s/ Christopher Allman
      CHRISTOPHER ALLMAN
      Assistant United States Attorney