CLOSED,APPEAL,LC1

# U.S. District Court
## DISTRICT OF KANSAS (Kansas City)
## CIVIL DOCKET FOR CASE #: <u>2:21–cv–02113–JAR–TJJ</u>

| | |
|---|---|
| Nally et al v. Graham et al | Date Filed: 03/02/2021 |
| Assigned to: Chief District Judge Julie A. Robinson | Date Terminated: 02/08/2022 |
| Referred to: Magistrate Judge Teresa J. James | Jury Demand: Plaintiff |
| Cause: 05:551 Administrative Procedure Act | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**Jared Nally**    represented by    **Darpana M. Sheth**
Foundation for Individual Rights in
Education
700 Pennsylvania Avenue SE
Washington, DC 20003
215–717–3473
Fax: 215–717–3440
Alternative Phone:
Cell Phone:
Email: darpana.sheth@thefire.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Katlyn A. Patton**
Foundation for Individual Rights in
Education
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
215–717–3473
Fax: 215–717–3440
Alternative Phone:
Cell Phone:
Email: katlyn.patton@thefire.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Stephen D. Bonney**
Bonney Arbitration & Mediation
5542 Crestwood Drive
Kansas City, MO 64110
816–363–3675
Alternative Phone:

Cell Phone: 816–550–4374
Email: sdbonney@outlook.com
*ATTORNEY TO BE NOTICED*
*Bar Number: 12322*
*Bar Status: Active*

**Plaintiff**

**Indian Leader Association**                 represented by   **Darpana M. Sheth**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Katlyn A. Patton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Stephen D. Bonney**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Number: 12322*
*Bar Status: Active*

V.

**Defendant**

**Ronald J. Graham**                          represented by   **Christopher Allman**
*sued in his individual and official*                        Office of United States Attorney – KCKS
*capacity as President of Haskell Indian*                    500 State Avenue, Suite 360
*Nations University*                                         Kansas City, KS 66101
                                                            913–551–6730
                                                            Fax: 913–551–6541
                                                            Alternative Phone:
                                                            Cell Phone: 9135152824
                                                            Email: Chris.Allman@usdoj.gov
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Bar Number: 14225*
                                                            *Bar Status: Active*

**Terra D. Morehead**
Office of United States Attorney – KCKS
500 State Avenue, Suite 360
Kansas City, KS 66101
913–551–6730

Fax: 913−551−6541
Alternative Phone:
Cell Phone:
Email: Terra.Morehead@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 12759*
*Bar Status: Active*

**Wendy A. Lynn**
U.S. District Court – Kansas City
500 State Avenue
Kansas City, KS 66101
913−551−6737
Fax: 913−551−6541
Alternative Phone:
Cell Phone:
Email: wendy.lynn@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 23594*
*Bar Status: Government Atty*

**Defendant**

**Haskell Indian Nations University**          represented by  **Christopher Allman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14225*
*Bar Status: Active*

**Terra D. Morehead**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 12759*
*Bar Status: Active*

**Wendy A. Lynn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 23594*
*Bar Status: Government Atty*

**Defendant**

**Bureau of Indian Education, Director
of**
*Tony L. Dearman*                              represented by  **Christopher Allman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14225*

Bar Status: Active

**Terra D. Morehead**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Bar Number: 12759
Bar Status: Active

**Wendy A. Lynn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Bar Number: 23594
Bar Status: *Government Atty*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/02/2021 | 1 | | COMPLAINT with trial location of Kansas City ( Filing fee $402, Internet Payment Receipt Number AKSDC−5424458.), filed by Jared Nally, Indian Leader Association. (Attachments: # 1 Exhibit)(Bonney, Stephen) (Entered: 03/02/2021) |
| 03/02/2021 | 2 | | CIVIL COVER SHEET by Plaintiffs Indian Leader Association, Jared Nally. (Bonney, Stephen) (Entered: 03/02/2021) |
| 03/02/2021 | 3 | | DESIGNATION OF PLACE OF TRIAL filed by Plaintiffs Indian Leader Association, Jared Nally – trial to be held in Kansas City. (Bonney, Stephen) (Entered: 03/02/2021) |
| 03/02/2021 | | | NOTICE OF JUDGE ASSIGNMENT: Case assigned to Chief District Judge Julie A. Robinson and Magistrate Judge Teresa J. James for all proceedings. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (lb) (Entered: 03/02/2021) |
| 03/03/2021 | | | SUMMONS ISSUED as to Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University, U.S. Attorney and U.S. Attorney General. (issued to Attorney for service) (lb) (Entered: 03/03/2021) |
| 03/18/2021 | 4 | | MOTION for attorney Darpana M. Sheth to appear pro hac vice ( Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−5440055.) by Plaintiffs Indian Leader Association, Jared Nally (referred to Magistrate Judge Teresa J. James) (Attachments: # 1 Affidavit Darpana M. Sheth, # 2 ECF Registration Form)(Bonney, Stephen) (Entered: 03/18/2021) |
| 03/18/2021 | 5 | | MOTION for attorney Katlyn A. Patton to appear pro hac vice ( Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−5440072.) by Plaintiffs Indian Leader Association, Jared Nally (referred to Magistrate Judge Teresa J. James) (Attachments: # 1 Affidavit Katlyn A. Patton, # 2 ECF Registration Form)(Bonney, Stephen) (Entered: 03/18/2021) |
| 03/19/2021 | 6 | | |

| | | | |
|---|---|---|---|
| | | | ORDER granting 4 Motion to Appear Pro Hac Vice of Darpana M. Sheth for Indian Leader Association and for Jared Nally pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge Teresa J. James on 3/19/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kas) (Entered: 03/19/2021) |
| 03/19/2021 | 7 | | ORDER granting 5 Motion to Appear Pro Hac Vice of Katlyn A. Patton for Indian Leader Association and for Jared Nally pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge Teresa J. James on 3/19/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kas) (Entered: 03/19/2021) |
| 03/26/2021 | 8 | | SUMMONS RETURNED EXECUTED –– Personal Service by Jared Nally, Indian Leader Association upon Ronald J. Graham served on 3/4/2021, answer due 3/25/2021 (Bonney, Stephen) (Entered: 03/26/2021) |
| 03/26/2021 | 9 | | Summons Returned Executed –– served by Certified Mail on 3/12/2021 Summons served on United States Attorney General. (Bonney, Stephen) (Entered: 03/26/2021) |
| 05/07/2021 | 10 | | CLERKS ORDER EXTENDING TIME until 6/1/2021 for Defendants Bureau of Indian Education, Director of, Haskell Indian Nations University, Ronald J. Graham to answer or otherwise plead. Signed by deputy clerk on 5/7/2021. (lb) (Entered: 05/07/2021) |
| 05/10/2021 | 11 | | ENTRY OF APPEARANCE by Terra D. Morehead on behalf of Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University. (Morehead, Terra) (Entered: 05/10/2021) |
| 05/19/2021 | 12 | | (WITHDRAWN PER 37 ORDER) MOTION for Preliminary Injunction by Plaintiffs Indian Leader Association, Jared Nally (Bonney, Stephen) Modified on 5/20/2021 to correct title and event type per chambers (kas). Modified on 8/19/2021. (jsh) (Entered: 05/19/2021) |
| 05/19/2021 | 13 | | MEMORANDUM IN SUPPORT of 12 MOTION for Permanent Injunction *on Claims 4 and 5* by Plaintiffs Indian Leader Association, Jared Nally (Attachments: # 1 Declaration of Jared Nally, # 2 Declaration of Lindsie Rank)(Bonney, Stephen) (Entered: 05/19/2021) |
| 05/26/2021 | 14 | | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 12 MOTION for Preliminary Injunction : Motion Hearing set for 7/22/2021 at 09:00 AM. Pursuant to Administrative Order 2021–05, the hearing will be conducted via Video Conference – Zoom before Chief District Judge Julie A. Robinson. Non–case related participants can join the hearing by dialing into the CONFERENCE LINE 1–888–363–4749 and entering the ACCESS CODE 4697748#. The Court will provide the parties with information for the video conference by Zoom Invitation. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bw) (Entered: 05/26/2021) |
| 05/27/2021 | 15 | | ORDER re 12 MOTION for Preliminary Injunction. Memorandum in Opposition deadline 6/21/2021. Reply Memorandum deadline 7/14/2021. The Court sets this matter for hearing on July 22, 2021, at 9:00 a.m. Signed by Chief District Judge Julie A. Robinson on 5/27/2021. (kas) (Entered: 05/27/2021) |
| 05/28/2021 | 16 | | |

|  |  |  |  |
|---|---|---|---|
|  |  |  | Unopposed MOTION for extension of time *to File the Administrative Record* by Defendants Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University (referred to Magistrate Judge Teresa J. James) (Allman, Christopher) (Entered: 05/28/2021) |
| 05/28/2021 | 17 |  | ORDER granting 16 Federal Defendants' Unopposed Motion to Extend the Time to File the Administrative Record in this Case. For good cause shown, the Court extends the time for Defendants to file the administrative record to July 1, 2021. Signed by Magistrate Judge Teresa J. James on 5/28/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ct) (Entered: 05/28/2021) |
| 06/01/2021 | 18 |  | ANSWER to Complaint by Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University.(Allman, Christopher) (Entered: 06/01/2021) |
| 06/01/2021 | 19 |  | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Ronald J. Graham (Allman, Christopher) (Entered: 06/01/2021) |
| 06/01/2021 | 20 |  | MEMORANDUM IN SUPPORT of 19 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Ronald J. Graham(Allman, Christopher) (Entered: 06/01/2021) |
| 06/21/2021 | 21 |  | MEMORANDUM IN OPPOSITION by Defendants Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University re 12 MOTION for Preliminary Injunction (Attachments: # 1 Exhibit A – Revised Code of Student Conduct)(Allman, Christopher) (Entered: 06/21/2021) |
| 06/22/2021 | 22 |  | RESPONSE by Plaintiffs Indian Leader Association, Jared Nally re 19 Motion to Dismiss for Failure to State a Claim (Bonney, Stephen) (Entered: 06/22/2021) |
| 06/24/2021 | 23 |  | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING 19 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM : Motion Hearing set for 7/22/2021 at 09:00 AM via Video Conference – Zoom before Chief District Judge Julie A. Robinson. Non–case related participants can join the hearing by dialing into the CONFERENCE LINE 1–888–363–4749 and entering the ACCESS CODE 4697748#. The Court will provide the parties with information for the video conference by Zoom Invitation. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (bw) (Entered: 06/24/2021) |
| 06/24/2021 | 24 |  | ENTRY OF APPEARANCE by Wendy A. Lynn on behalf of All Defendants. (Lynn, Wendy) (Entered: 06/24/2021) |
| 06/28/2021 | 25 |  | Joint MOTION for extension of time *to file the Administrative Record, Defendant Grahams reply in support of his Motion to Dismiss (Doc. 19), and the Plaintiffs reply in support of the Plaintiffs Motion for a Preliminary Injunction (Doc. 12)* by Defendants Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University. (Lynn, Wendy) (Entered: 06/28/2021) |
| 06/29/2021 |  |  | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 25 Joint MOTION for extension of time *to file the Administrative Record, Defendant Grahams reply in support of his Motion to Dismiss (Doc. 19), and the** |

| | | | |
|---|---|---|---|
| | | | *Plaintiffs reply in support of the Plaintiffs Motion for a Preliminary Injunction (Doc. 12).* **The motion will be resolved by the District Judge.** (ct) (Entered: 06/29/2021) |
| 06/30/2021 | 26 | | ORDER granting <u>25</u> Joint Motion for Extension of Time to File. The Court extends the following deadlines: (1) the Administrative Record shall be filed on or before July 19, 2021; (2) Plaintiffs' reply in support of their motion for preliminary injunction (Doc. 12) is due 30 days after the Administrative Record is filed; and (3) Defendant Graham's reply in support of his motion dismiss Plaintiffs' First Amended Bivens claims (Doc. 19) is due July 13, 2021. The Zoom argument on Defendant Graham's motion to dismiss on July 22, 2021 will proceed as scheduled. Chambers will be in touch with counsel to reschedule the hearing on Plaintiffs' preliminary injunction motion. Signed by Chief District Judge Julie A. Robinson on 6/30/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 06/30/2021) |
| 07/13/2021 | <u>27</u> | | REPLY TO RESPONSE TO MOTION by Defendant Ronald J. Graham re: <u>19</u> Motion to Dismiss for Failure to State a Claim (Allman, Christopher) (Entered: 07/13/2021) |
| 07/14/2021 | 28 | | NOTICE of Hearing:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING <u>12</u> MOTION for Preliminary Injunction : (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Motion Hearing set for <u>9/16/2021 at 10:00 AM</u> via Video Conference – Zoom before Chief District Judge Julie A. Robinson. (bw) (Entered: 07/14/2021) |
| 07/19/2021 | <u>29</u> | | ADMINISTRATIVE RECORD by Defendants Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University. (Attachments: # <u>1</u> Certification and Index, # <u>2</u> USA000001–528, # <u>3</u> USA000529–914, # <u>4</u> USA000915–1129)(Allman, Christopher) (Entered: 07/19/2021) |
| 07/20/2021 | <u>30</u> | | SUPPLEMENT to <u>29</u> Administrative Record, *USA001130–1475* by Defendants Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University. (Allman, Christopher) (Entered: 07/20/2021) |
| 07/20/2021 | <u>31</u> | | CERTIFICATE OF SERVICE by Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University re <u>30</u> Supplement. (Allman, Christopher) (Entered: 07/20/2021) |
| 07/22/2021 | <u>32</u> | | MINUTE ENTRY for proceedings held before Chief District Judge Julie A. Robinson: MOTION HEARING held on 7/22/2021 taking under advisement <u>19</u> Motion to Dismiss for Failure to State a Claim filed by Ronald J. Graham. (Court Reporter Dani Murray.) (bw) (Entered: 07/22/2021) |
| 07/29/2021 | <u>33</u> | | MEMORANDUM AND ORDER granting <u>19</u> Motion to Dismiss for Failure to State a Claim. Plaintiffs' Count 3 against Defendant Graham in his individual capacity is hereby dismissed with prejudice. Signed by Chief District Judge Julie A. Robinson on 7/29/2021. (kas) (Entered: 07/29/2021) |
| 08/06/2021 | <u>34</u> | | MOTION to Dismiss for Lack of Jurisdiction *or Failure to State a Claim Plaintiffs' First, Fourth, Fifth, Sixth, and Seventh Claims* by Defendants Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University (Allman, Christopher) (Entered: 08/06/2021) |

| 08/06/2021 | 35 | | MEMORANDUM IN SUPPORT of 34 MOTION to Dismiss for Lack of Jurisdiction *or Failure to State a Claim Plaintiffs' First, Fourth, Fifth, Sixth, and Seventh Claims* by Defendants Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University(Allman, Christopher) (Entered: 08/06/2021) |
| --- | --- | --- | --- |
| 08/18/2021 | 36 | | REPLY TO RESPONSE TO MOTION by Plaintiffs Indian Leader Association, Jared Nally re: 12 Motion for Preliminary Injunction (Bonney, Stephen) (Entered: 08/18/2021) |
| 08/19/2021 | 37 | | ORDER withdrawing 12 Motion for Preliminary Injunction. Plaintiffs' request in the reply memorandum (Doc. 36), to withdraw the Motion for Preliminary Injunction on Claims 4 and 5 is granted. Whether Claims 4 and 5 are subject to dismissal under the mootness doctrine remains an open question that will be addressed in the context of the pending motion to dismiss. The preliminary injunction hearing set for September 16, 2021 is hereby cancelled. Signed by Chief District Judge Julie A. Robinson on 8/19/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 08/19/2021) |
| 08/19/2021 | 38 | | Joint MOTION to Stay Deadlines by Plaintiffs Indian Leader Association, Jared Nally. (Bonney, Stephen) (Entered: 08/19/2021) |
| 08/19/2021 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 38 Joint MOTION to Stay Deadlines. The motion will be resolved by the District Judge. (ct)** (Entered: 08/19/2021) |
| 08/20/2021 | 39 | | ORDER granting 38 Joint MOTION to Stay Deadlines. Status Report due by 9/20/2021. Signed by Chief District Judge Julie A. Robinson on 8/20/2021. (kas) (Entered: 08/20/2021) |
| 09/20/2021 | 40 | | STATUS REPORT *and Joint Motion to Extend Stay* by Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University. (Allman, Christopher) Modified on 9/21/2021 to make entry a pending motion per JAR chambers(kas). (Entered: 09/20/2021) |
| 09/21/2021 | 41 | | ORDER granting 40 Joint Motion to Extend Stay. The stay is hereby extended for an additional 45 days pending settlement negotiations. By November 4, 2021, the parties shall provide the Court with a status update on the settlement discussions and, if necessary, a joint proposal for a revised briefing schedule upon expiration of the stay. Signed by Chief District Judge Julie A. Robinson on 9/21/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 09/21/2021) |
| 11/04/2021 | 42 | | Joint MOTION for extension of time *regarding current stay of proceedings* by Defendants Bureau of Indian Education, Director of, Haskell Indian Nations University. (Lynn, Wendy) (Entered: 11/04/2021) |
| 11/04/2021 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 42 Joint MOTION for extension of time regarding current stay of proceedings. The motion will be resolved by the District Judge. (ct)** (Entered: 11/04/2021) |
| 11/05/2021 | 43 | | ORDER granting 42 Joint Motion to Extend Stay. The Court grants the parties' request to extend the stay of this action for 8 days. By November 12, 2021, the parties shall file a status report stating their positions on whether they seek |

| | | | |
|---|---|---|---|
| | | | approval to proceed to mediation with a Magistrate Judge selected by the Court. Signed by Chief District Judge Julie A. Robinson on 11/5/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 11/05/2021) |
| 11/12/2021 | 44 | | Joint MOTION for extension of time *regarding current stay of proceedings* by Defendants Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University (referred to Magistrate Judge Teresa J. James) (Lynn, Wendy) (Entered: 11/12/2021) |
| 11/15/2021 | 45 | | ORDER granting 44 Joint Motion to Extend Stay. The parties' request to extend the stay to allow for continued settlement negotiations until December 3, 2021 is granted. By December 3, 2021, the parties shall file a status report including their positions on whether they seek approval to proceed to mediation with a Magistrate Judge selected by the Court. Signed by Chief District Judge Julie A. Robinson on 11/15/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 11/15/2021) |
| 12/03/2021 | 46 | | Joint MOTION for extension of time *regarding current stay of proceedings* by Defendants Bureau of Indian Education, Director of, Ronald J. Graham, Haskell Indian Nations University. (Lynn, Wendy) (Entered: 12/03/2021) |
| 12/03/2021 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 46 Joint MOTION for extension of time *regarding current stay of proceedings*. The motion will be resolved by the District Judge. (ts)** (Entered: 12/03/2021) |
| 12/06/2021 | 47 | | ORDER granting 46 Joint Motion to Extend Stay for an additional 35 days. By January 7, 2022, the parties shall submit either a stipulation of dismissal and Rule 54(b) motion as outlined in their motion, or a joint status report. Signed by District Judge Julie A. Robinson on 12/6/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 12/06/2021) |
| 01/05/2022 | 48 | | Joint MOTION for extension of time *regarding current stay of proceedings* by Defendants Bureau of Indian Education, Director of, Haskell Indian Nations University (referred to Magistrate Judge Teresa J. James) (Lynn, Wendy) (Entered: 01/05/2022) |
| 01/06/2022 | 49 | | ORDER granting 48 Joint Motion for Extension of Time. By February 7, 2022, the parties shall submit either a stipulation of dismissal and Rule 54(b) motion as outlined in their motion, or a joint status report. Signed by District Judge Julie A. Robinson on 1/6/2022. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 01/06/2022) |
| 02/07/2022 | 50 | | Unopposed MOTION for Judgment *on Third Claim for Relief* by Plaintiffs Indian Leader Association, Jared Nally (Bonney, Stephen) (Entered: 02/07/2022) |
| 02/07/2022 | 51 | | Joint MOTION for Judgment by Plaintiffs Indian Leader Association, Jared Nally (Attachments: # 1 Exhibit Proposed Consent Decree)(Bonney, Stephen) (Entered: 02/07/2022) |
| 02/08/2022 | 52 | | ORDER granting 50 PLAINTIFFS' UNOPPOSED RULE 54(b) MOTION FOR ENTRY OF FINAL JUDGMENT. Signed by District Judge Julie A. Robinson on 2/8/2022. (heo) (Entered: 02/08/2022) |

| 02/08/2022 | 53 | | CONSENT DECREE re 51 Motion for Judgment. Signed by District Judge Julie A. Robinson on 2/8/2022. (Attachments: # 1 Exhibit A) (heo) (Entered: 02/08/2022) |
| 03/07/2022 | 54 | | NOTICE OF APPEAL by Plaintiffs Indian Leader Association, Jared Nally. Filing fee $ 505, Internet Payment Receipt Number AKSDC–5730452. (Bonney, Stephen) (Entered: 03/07/2022) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY-LEAVENWORTH DIVISION**

| | |
|---|---|
| JARED NALLY, ET AL., | |
| *Plaintiffs,* | **CIVIL ACTION NO.: 21-2113** |
| v. | |
| TAMARAH PFEIFFER, ET AL., | |
| *Defendants.* | |

---

## ORDER GRANTING PLAINTIFFS' UNOPPOSED RULE 54(b) MOTION FOR ENTRY OF FINAL JUDGMENT

Pending before this Court is the Plaintiffs' Unopposed Rule 54(b) Motion for Entry of Final Judgment, filed February 7, 2022 (Doc. 50). Upon consideration of the motion, the papers submitted in support thereof, and finding that the Court's order of July 29, 2021, was a final judgment and that there is no just reason to delay certification, the Court hereby ORDERS that Plaintiffs' Unopposed Rule 54(b) Motion for Entry of Final Judgment is **GRANTED** and that this Court's July 29, 2021, Memorandum and Order dismissing Claim Three of Plaintiffs' Complaint is certified as a final judgment pursuant to Federal Rule of Civil Procedure Rule 54(b).

DATED this 8th day of February, 2022.

/s/ Julie A. Robinson
THE HONORABLE JULIE ROBINSON
United States District Judge

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JARED NALLY, ET AL., | |
| *Plaintiffs,* | **CIVIL ACTION NO.: 21-2113** |
| v. | |
| TAMARAH PFEIFFER, ET AL., | |
| *Defendants.* | |

## CONSENT DECREE

A.   WHEREAS, Plaintiffs, Jared Nally and the Indian Leader Association, have filed a complaint in this action, asserting claims under the Administrative Procedure Act §§ 701–706, the Declaratory Judgment Act, and the Fifth Amendment against Defendants Tamarah Pfeiffer, in her official capacity as Acting President of Haskell Indian Nations University; Haskell Indian Nations University; and Tony L. Dearman, in his official capacity as Director of Bureau of Indian Education; and the Bureau of Indian Education (collectively, the "Federal Defendants"); and asserting a claim under the First Amendment against now-former Haskell Indian Nations University President Ronald J. Graham, in his individual capacity for money damages under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); and seeking attorneys' fees and costs under the Equal Access to Justice Act.

B.   WHEREAS, by entering into this Consent Decree, Federal Defendants do not

admit the allegations in the Complaint filed in this action or any liability arising from those allegations.

C. WHEREAS, with the exception of Plaintiffs' *Bivens* claim, the Plaintiffs and the Federal Defendants agree that settlement of this matter without further litigation is in the public interest and that the entry of this Consent Decree is the most appropriate means of resolving this action.

D. WHEREAS, the Plaintiffs and the Federal Defendants agree, and by entering this Consent Decree the Court finds, that this Consent Decree: (1) has been negotiated by the Plaintiffs and the Federal Defendants at arm's length, in good faith; (2) will avoid prolonged litigation among the Plaintiffs and the Federal Defendants; and (3) is fair, reasonable, and furthers the objectives of the Administrative Procedure Act §§ 701–706 and the Equal Access to Justice Act.

NOW, THEREFORE, without adjudication of any issue of fact or law, except as provided in Section I (Jurisdiction) below, and with the consent of the Plaintiffs and Federal Defendants,

IT IS ADJUDGED, ORDERED, and DECREED as follows:

## I.   JURISDICTION

1.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and over the Plaintiffs and the Federal Defendants to this action for the purpose of entry and enforcement of this Consent Decree. Venue lies in the District of Kansas pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C.

§ 1391(e)(1). Solely for the purposes of this Consent Decree or any action to enforce this Consent Decree, the Federal Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Federal Defendants shall not challenge this Court's jurisdiction to enter and enforce this Consent Decree.

## II.      PARTIES BOUND

2.    The obligations of this Consent Decree apply to and are binding upon the Plaintiffs and Federal Defendants and each of their successors, assigns, or other entities or persons otherwise bound by law to comply with this Consent Decree. Federal Defendants shall not contest the right of any of the Plaintiffs or their successors to enforce the provisions of this Consent Decree.

## III.      GENERAL PROVISIONS

3.    The mutual objectives of the Plaintiffs and Federal Defendants in entering into this Consent Decree are (i) to resolve all of the claims asserted by Plaintiffs in the first, second, fourth, fifth, sixth, and seventh causes of action of the Complaint; and (ii) to avoid potentially costly and time-consuming litigation. This Consent Decree is unique to the specific circumstances related to this action and is not precedent for any other Consent Decree.

4.    The Effective Date of this Consent Decree shall be the date that the District Court enters the Consent Decree.

## IV.    SPECIFIC PROVISIONS

### A.    First Cause of Action

5.    Plaintiffs' First Cause of Action alleges that by issuing the October 16, 2020, Directive and enforcing it for 90 days, the Federal Defendants unlawfully retaliated against Plaintiff Jared Nally for engaging in activities protected under the First Amendment. Plaintiffs bring this claim against the Federal Defendants in their official capacities under the Administrative Procedure Act §§ 701–706 and request injunctive and declaratory relief.

6.    The Directive has since been rescinded. To settle the Plaintiffs' First Cause of Action, Federal Defendants agree that they will not promulgate a directive or other disciplinary measure similar to the October 16, 2020, Directive against Plaintiffs for their First Amendment-protected activity. Federal Defendants further agree that they, their agents, and their successors and assigns, will not engage in retaliation against Plaintiffs for First Amendment-protected activity.

### B.    Second Cause of Action

7.    The Indian Leader Association is an unincorporated student association funded directly through allocation of one third of Haskell's student activity fee funds.

8.    A 1989 Settlement Agreement between Haskell Indian Nations University and the Indian Leader Association, which remains in effect, states that "no officer, agent, instructor, or employee of Haskell shall refuse to approve a Plan of

Operation for the Association, substantially similar to the attached Plan of Operation." Admin. R., ECF No. 29-2, USA000003–000004.

9. Plaintiffs' Second Cause of Action alleges that by targeting the Indian Leader Association with a policy that removed its chosen faculty adviser, withholding more than $10,000 in funds to which it is entitled, and refusing to grant official university recognition to the Indian Leader Association, Federal Defendants unlawfully retaliated against Plaintiff the Indian Leader Association for activities protected by the First Amendment. Specifically, Plaintiffs allege that the Federal Defendants retaliated against the Indian Leader Association for engaging in newsgathering and publishing that was critical of the university administration. Plaintiffs bring this claim against Federal Defendants in their official capacities under the Administrative Procedure Act §§ 701–706 and request declaratory and injunctive relief, including restoration of funds.

10. To settle Plaintiffs' Second Cause of Action, the Federal Defendants agree to approve the Indian Leader Association's Plan of Operations for the 2021-2022 academic year, attached as **Exhibit A**. Defendant Haskell Indian Nations University agrees to affirmatively provide to the Indian Leader Association monthly account statements, subject to the Indian Leader Association's submission of a completed signature card and signed Plan of Operations as required by Student Bank Policies and Procedures, which apply to all student organizations transacting business with the Student Bank. The monthly account statements will be provided as a matter of course; the Student Bank

will send the statement to an individual appointed by the Indian Leader Association and designated to the Student Bank each semester. The signature card provides the Student Bank with notice of the authorized signers for the student organization's account. The Indian Leader Association must also submit a Plan of Operations every two years, unless it makes changes to the Plan, in which case it must submit its Plan of Operations upon making any such changes. The Plan of Operations must be signed by the following individuals: University President, Chief of Finance, and Student Senate President.

11.     Defendant Haskell Indian Nations University agrees to provide the Indian Leader Association with the number of students enrolled in each academic term, and the total amount of collected student activity fees annually, upon written request by the Indian Leader Association or its authorized representative to the Student Bank.

**C.     Third Cause of Action**

12.     Plaintiff's Third Cause of Action alleges First Amendment retaliation under *Bivens* by Defendant former President Graham in his individual capacity, seeking money damages. The Court granted Defendant Graham's motion to dismiss Plaintiffs' Third Cause of Action on July 29, 2021, on grounds that damages for First Amendment retaliation are not available under *Bivens*. (Doc. 33). On November 5, 2021, the Supreme Court of the United States granted certiorari in *Egbert v. Boule*, Case No. 21-147, in which one of the questions

presented is whether a cause of action exists under *Bivens* for First Amendment retaliation claims, the exact issue upon which the Court dismissed the Third Cause of Action. Because of this development, the Third Cause of Action will not be settled at this time. Rather, Plaintiffs will file an Unopposed Rule 54(b) Motion for Final Judgment on their Third Cause of Action on or before February 7, 2022.

**D.    Fourth and Fifth Causes of Action**

13.    Plaintiffs' Fourth and Fifth Causes of Action allege that the Haskell Indian Nations University Campus Expression Policy is unconstitutionally overbroad and vague because the policy requires all student expression to be "consistent" with Haskell's CIRCLE values of Communication, Integrity, Respect, Collaboration, Leadership, and Excellence. On May 19, 2020, Plaintiffs moved to preliminarily enjoin the Federal Defendants from enforcing the Campus Expression Policy. On May 20, 2020, the Federal Defendants amended the Haskell Code of Student Conduct and uploaded a new version of the Haskell Code of Student Conduct to Haskell's website that excised the challenged policy.

14.    To settle Plaintiffs' Fourth and Fifth Causes of Action, the Federal Defendants agree that they, their agents, and their successors and assigns, will not reinstate the Campus Expression Policy or any substantially similar policy that restricts student expression to that which is consistent with the CIRCLE values.

7

### E.   Sixth Cause of Action

15.   Plaintiffs' Sixth Cause of Action alleges that Federal Defendants violated Plaintiff Nally's due process rights by subjecting him to the Directive, which was a disciplinary measure, without affording him the due process protections included in Haskell's Code of Conduct and those required by 25 C.F.R. § 42.8. Plaintiffs bring this claim against Federal Defendants in their official capacities under the Administrative Procedure Act §§ 701–706, requesting injunctive and declaratory relief.

16.   To settle Plaintiffs' Sixth Cause of Action, the Federal Defendants agree that they will not promulgate a directive or issue any other discipline against Plaintiffs without following the procedures outlined in Part 42 of Title 25 of the Code of Federal Regulations and the Haskell Code of Conduct.

### F.   Seventh Cause of Action

17.   Plaintiffs' Seventh Cause of Action alleges that the Federal Defendants violated the aforementioned 1989 Settlement Agreement between Haskell Indian Nations University's predecessor in interest, Haskell Indian Nations Junior College, and the Indian Leader Association. The 1989 Settlement Agreement states, among other things, that Haskell shall not:

a.   Exercise oversight or editorial control over *The Indian Leader*;

b.   Refuse to approve a Plan of Operation for the Indian Leader Association that is substantially similar to the version incorporated into the 1989 Settlement Agreement; or

c. Suspend publication of *The Indian Leader* on the grounds that a vacancy has arisen in the position of faculty adviser to the Association.

18. The 1989 Settlement Agreement also requires Haskell to provide the Indian Leader Association with a monthly bank account statement of the funds in the Association's account with the Haskell Student Bank. Plaintiffs bring their Seventh Cause of Action against the Federal Defendants in their official capacities under the Administrative Procedure Act §§ 701–706, seeking declaratory and injunctive relief, including specific performance of the 1989 Settlement Agreement.

19. To settle Plaintiffs' Seventh Cause of Action, the Federal Defendants agree to abide by the 1989 Settlement Agreement. Further, Defendant Haskell Indian Nations University agrees to provide the Indian Leader Association or its authorized representative with a monthly account statement as a matter of course, subject to the terms of Paragraph 10 above. Defendant Haskell Indian Nations University agrees to provide the Indian Leader Association with the number of students enrolled in each academic term, and the total amount of collected student activity fees annually, upon written request by the Indian Leader Association or its authorized representative to the Student Bank.

## V.    PAYMENT OF ATTORNEYS' FEES

20. The Plaintiffs and Federal Defendants have entered into a Stipulation of Settlement and Release in this matter. That agreement includes terms regarding the payment of attorneys' fees.

9

## VI.    RETENTION OF JURISDICTION AND DISPUTE RESOLUTION

21.    The Court shall retain jurisdiction to modify and enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of this Consent Decree for eighteen (18) months after the Effective Date through the following dispute resolution procedures. Thereafter, any dispute arising under or relating to this Consent Decree shall be presented to the Court upon a motion to reopen the case and proposed motion for the requested relief, with opportunity of any opposing party to respond according to the briefing schedule under the Local Rules of the Court.

22.    If Plaintiffs believe there has been substantial noncompliance with any material provision of this Consent Decree, the Plaintiffs and Federal Defendants agree to the following procedure to resolve any dispute arising under this Consent Decree. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes between the Plaintiffs and Federal Defendants arising under or with respect to this Consent Decree.

    a.    A claim of substantial noncompliance can be made on the ground that any of the Defendants failed to materially comply with their obligations under this Consent Decree.

    b.    Plaintiffs will confer with the defendant in question over any claim of substantial noncompliance and the Plaintiffs and Federal Defendants will

10

attempt to resolve any such claim in good faith.

c.  If the Plaintiffs and Federal Defendants are unable to resolve any claim of substantial noncompliance through this initial conference, Plaintiffs will submit a written Notice of Substantial Noncompliance to all Federal Defendants, specifying their basis for believing there has been substantial noncompliance.

d.  Any of the Federal Defendants may respond, in writing, to any such Notice of Substantial Noncompliance within thirty (30) days.

e.  Within fourteen (14) days after Federal Defendants' service of their written responses on Plaintiffs, the Plaintiffs and Federal Defendants will again meet and confer to attempt to resolve the dispute in good faith without seeking court intervention.

f.  In the event the Plaintiffs and Federal Defendants are unable to resolve the dispute, any party may petition the Court to order specific performance of this Consent Decree.

## VII.   MODIFICATION

23.  Any material modification of this Consent Decree shall be made only by written agreement of the Plaintiffs and Federal Defendants and shall take effect only upon approval by the Court. Any non-material modification of this Consent Decree shall be made by written agreement of the Plaintiffs and Federal Defendants, and shall not take effect until filed with the Court. Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce,

11

supervise, or approve modifications to this Consent Decree.

24. The provisions of this Consent Decree are not severable. The Plaintiffs and Federal Defendants' consent is hereto conditioned upon the entry of the Consent Decree in its entirety without modification, addition, or deletion except as agreed to by the Plaintiffs and Federal Defendants.

## VIII.  SIGNATORIES

25. The undersigned representatives of the Plaintiffs and Federal Defendants each certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document. This Consent Decree may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument.

## IX.    FINAL JUDGMENT

26. This Consent Decree constitutes the final, complete, and exclusive understanding among the Plaintiffs and Federal Defendants with respect to the settlement embodied in the Consent Decree. The Plaintiffs and Federal Defendants acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree, with the exception of the representations, agreements, and understandings in the Stipulation of Settlement and Release referred to above.

27. Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment between and among the Plaintiffs and Federal Defendants with respect to Plaintiffs' First, Second, Fourth, Fifth, Sixth, and Seventh Causes of Action. The Court finds that there is no reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 58.

SO ORDERED THIS 8th DAY OF FEBRUARY, 2022.

s/Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

Dated: February 7, 2022

/s/ Stephen Douglas Bonney

STEPHEN DOUGLAS BONNEY
KS. Bar No. 12322
5542 Crestwood Drive
Kansas City, MO 64110
(816) 363–3675
sdbonney@outlook.com

/s/ Darpana M. Sheth

DARPANA M. SHETH
NY Bar No. 4287918
KATLYN A. PATTON
PA Bar No. 328353; OH Bar No. 097911
Admitted *Pro Hac Vice*
FOUNDATION FOR INDIVIDUAL
  RIGHTS IN EDUCATION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (215) 717-3440
darpana.sheth@thefire.org
katlyn.patton@thefire.org

*Counsel for Plaintiffs Jared Nally and
the Indian Leader Association*

DUSTON J. SLINKARD
Acting United States Attorney
District of Kansas

/s/ Wendy A. Lynn

Wendy A. Lynn
Assistant United States Attorney
Ks. S. Ct. No. 23594
500 State Ave., Suite 360
Kansas City, KS 66101
Tele: (913) 551-6737
Fax: (913) 551-6541
Email: wendy.lynn@usdoj.gov

/s/ Christopher Allman

CHRISTOPHER ALLMAN
Assistant United States Attorney
Ks. S. Ct. No. 14225
500 State Avenue, Suite 360
Kansas City, Kansas 66101
Tele: (913) 551-6730

Fax: (913) 551-6541
Email: chris.allman@usdoj.gov

*Attorneys for the Federal Defendants*

# Exhibit A

Case 2:21-cv-02113-JAR-TJJ   Document 56-1   Filed 02/03/22   Page 28 of 90

**The Indian Leader Association 2021-2022 Plan of Operations**

The Indian Leader Association

Haskell Indian Nations University

Article 1: Name

The Indian Leader Association.

Article 2: Purpose

Section 1: General Purpose

The purpose of the Indian Leader Association is to provide a media outlet to serve the Haskell Indian Nations University campus and the local community by connecting mainstream or local news and cultural issues across Indian Country to the Haskell campus and community. The Indian Leader, the oldest Native American student newspaper, is an independent student media outlet of Haskell Indian Nations University and will also serve the student body by communicating important information that impacts student academics and campus life.

Section 2: Responsibilities

The Indian Leader will produce a minimum (5) issues per semester unless authorized by the Indian Leader Association Executive Board (consisting of consensus ruling) and approved by the Indian Leader Association Advisor.

Section 3: Goals

The goals of the Indian Leader Association will be to seek the truth and report the facts for the betterment of Haskell Indian Nations University and its students, to promote Native American issues and provide an outlet for those stories to be told, and provide Haskell Indian Nations University with accurate reporting while maintaining awareness of journalism ethics and standards.

Article 3: Faculty Advisor

Section 1: Appointment

To assist students in the publishing of The Indian Leader newspaper, Haskell Indian Nations University may appoint one faculty advisor at the beginning of each academic year based on a nominee selected by majority vote of The Indian Leader Association. Should Haskell Indian Nations University find a nominee unfit for the role of Faculty Advisor, they shall provide a written objection to the Indian Leader Association along with a request to select another nominee.

Section 2: Role

The faculty advisor may freely advise and instruct student editors and reporters in the subject of journalism and relevant professional standards, comment and critique the product of student journalists, and offer fiscal and technological guidance to the Indian Leader Association. The advisor may provide what assistance is needed to produce the Indian Leader newspaper.  A faculty advisor may make non-binding recommendations to the student editors, which the student editors may, at their sole discretion, take into consideration in the free exercise of the independent editorial judgment. Although a faculty advisor of the Association may freely offer advice or assistance to the student members of the Association, neither the faculty advisor nor other Haskell officers or employees have the right to censor, modify in any way, the content the Association produces.

Section 3: Removal

Any Faculty Advisor may be removed at the discretion of Haskell Indian Nations University.

Article 4: Membership

Section 1: Staff Writer

Paragraph 1: Definition

Staff Writers are the voting membership of the Indian Leader Association.

Paragraph 2: Eligibility

Eligibility to be a Staff Writer requires (a) current enrollment at Haskell Indian Nations University, (b) must inform the Association, orally or in writing, of an intention to become a member of the Association.

Paragraph 3: Revoking Membership

In the event that any member fails to attend three consecutive meetings of the Association without an excused absence, that person may be removed from the membership rolls of the Association by majority vote. Meetings shall be considered based on the requirements of Article 5 regardless of where attendance meets quorum.

Section 2: Non-members

Non-members may still contribute to the newspaper and be compensated by the Indian Leader Association, but will not retain the voting rights of Staff Writers. Non-member

contributions will be compensated but are still required to be a current student at Haskell Indian Nations University.

Article 5: Meetings

Section 1: First Meeting of the Semester

At the beginning of each semester, the Association shall decide upon a day, time and place for such regular weekly meetings. Once the day, time and place has been decided by the Association, a notice of such will properly been conveyed to the public, and no further notice shall be required for the Association to conduct business at such regular weekly meetings.

Section 2: Weekly Meetings

Meetings of the Association shall be held weekly and will be open to all Haskell students and to the public.

Section 3: Non-Weekly Meetings

Any meeting of the Association not held on the day, time and place of the regular weekly meeting may be properly convened only upon two days' prior written notice. Such notice shall be made to the Association by posting an announcement.

Article 6: Voting

Section 1: Quorum

Quorum shall be established by the majority of Staff Writers being in attendance. Additionally, a quorum to vote to remove Staff Writers according to Article 4, Section 1, Paragraph 3 shall not include those up for removal in determining a majority.

Article 8: Editorial Board

Section1: Definition

The Editorial Board of the Indian Leader Association shall include an Editor-In-Chief, Assistant Editor, Distribution Manager, and Secretary/Treasurer.

Section 2: Eligibility

Staff Writers are eligible for Editorial Board elections . Decisions made at duly convened meetings of the Association are binding on members.

Section 3: Term

Each position of the Editorial Board shall serve a term equivalent to one academic year. All terms will be up for re-election on the first convened meeting of the Fall semester.

Section 4: Duties

Paragraph 1: Editor-In-Chief

The Editor-In-Chief is responsible for (a) directing and supervising all Indian Leader functions, (b) setting semester deadlines with faculty advisor, (c) scheduling and conducting weekly staff meetings, (d) updating dummy sheet for layout, (e) reading all copy before web and print publication, (f) checking stories for legal and ethical concerns, (g) keeping track of Freedom of Information Act Requests (h) sending final copies to printer, (i) reviewing and approving payroll, (j) managing administrative accounts (e.g. website),  and (k) representing The Indian Leader on campus and in the community. The Editor-In-Chief will also be President of the Haskell NAJA Student Chapter. The Editor *may not vote* during business meetings and will only vote during a tie breaker.

Paragraph 2: Assistant Editor

The Assistant Editor is responsible for (a) supporting the Editor in all Indian Leader functions and tasks, (b) performing second reads on all copy before web and print publication, (c) designing newspaper layout, (d) supports Editor-In-Chief with administrative accounts (e.g. website), (f) facilitate the fundraising opportunities for the Haskell NAJA Student Chapter as they arise, and (g) Responsible for any Editor duties in his/her absence.

Paragraph 3: Distribution Manager

The Distribution Manager manages all distribution of Indian Leader Association content to the public. Responsibilities involve (a) managing social media and website accounts, (b) posting and monitoring digital content, and (c) coordinating circulation and newspaper delivery on campus when classes are held on campus. Locations for Distribution – Navarre Hall: Post office area, student bank area, admissions, Haskell Foundation offices, the President's office, the Registrar's office, the VP of Academics office, and financial aid; Coffin Sports complex; Sequoyah Hall: The Student Success Center, Dean's office (across the hall from SSC) math department (north end of building), and science department (middle, east side); Ross Hall: humanities office, tables on both sides of building, Dean's office, and offices in far NE corner of building; Pontiac Hall; Parker Hall-Lobby area, department of education offices, and AIS wing; Tam-i-nend Hall;

Winnemucca Hall; Blalock Hall; Roe Cloud Hall; Curtis Hall; Tommaney Hall: including technology center and common areas; Blue Eagle Hall; Pocahontas Hall; Minoka Hall; Winona Hall; Stidham Union; Osceola-Keokuk Hall; Tecumseh Hall-Student Activities and Alumni Association room downstairs.

Paragraph 4:

The Secretary/Treasurer will work with the Editor to help keep the Indian Leader Association on budget by maintaining financial records as well as providing accurate accounts of each meeting. Secretary/Treasurer responsibilities includes (a) providing financial report at each meeting, (b) providing meeting minutes (minutes should be prepared and posted to the Indian Leader Google drive within 2 days of each meeting), (c) maintaining Indian Leader Gmail providing staff with a report of the activity of each at meetings or as needed, (d) maintaining Google drive documents, (e) receiving and tracking advertising payments, and (f) managing payroll. Payroll management as follows (a) The Editor will submit a final copy of the newspaper to Secretary/Treasurer upon submission to printer, (b) Secretary/Treasurer will submit prepared payroll to Editor or Assistant Editor for approval (c) Once approved, Secretary/Treasurer will initiate meeting to vote on payroll, (d) Secretary/Treasurer will obtain Advisor's signature and submit payroll to the student bank, (e) Once checks are picked up from the bank, Secretary/Treasurer will notify check recipients via email or Indian Leader staff Facebook page of where/when to get checks, (f) ensures mail is picked up from the post office and delivered to the Indian Leader office before each weekly meeting.

Section 5: Vacancies

If an Editorial Board member wishes to abdicate their role, they will do so in writing to the Indian Leader Association. Vacancies may also arise in the event the staff writers conduct a majority vote to impeach a member of the Editorial Board. In the event that an Editorial Board position becomes vacant,  an election shall take place at the next Indian Leader Association meeting. Editorial Board members may be candidates for vacant positions, and if elected, nominations will continue to fill the newly vacated role(s). Positions resulting from vacancies will not serve a full academic year, and will come up for re-election on the first convened meeting of the fall semester.

Article 9: Compensation and Awards

Section 1: Editorial Board

The Editorial Board shall be compensated $50 each issues of the Indian Leader for the completion of their duties described in Article 8 Section 4.

Section 2: Content

The Indian Leader Association provides compensation for the following:

- Articles, web or print: $0.10 per word.
- Photos:  $5.00 per published photo with the max limit of 3 per article. Rate includes photos published on social media. Payee must be owner of all photos provided.
- Comics: $15 per comic strip.
- Photo Collages: $15.00 with permission only.
- Other social media content:  $15.00 per published submission of original (this means created by you) creation of video, podcast, radio, audio, or infographic. Content will be reviewed on a case-by-case basis.

Article 10: Accounts & Property

Section 1: Accounts

The financial backing of the Association is kept within the Haskell Student Bank and must follow banking procedures of the institution. The organization must follow banking policies under the supervision of the Haskell Student Bank. The monetary budget must reflect only with supplies, events, newspapers, magazines or a direct cost of the Indian Leader Association and not a subsidiary group or division. The Indian Leader Association receives ⅓ of the Student Activity Fee which is divided among other groups (Student Activities ⅓ and Campus Activities Association ⅓). The money set forth toward the Association will be authorized for withdrawal under the supervision of the Haskell banking staff.

Section 2: Use of Funds

Paragraph 1: Direct Costs

Funds for the operation of *The Indian Leader* will be used for the following: invoices, office supplies, payroll, campus events conducted or sponsored by The Indian Leader Association, and other operational expenses.

Paragraph 2: Reimbursement

Requests for reimbursement will be considered, but as a general rule, requests for funds should be submitted in advance through executive staff vote, recorded in meeting minutes, and submitted to Haskell bank for withdrawal.

Paragraph 3: Fund Responsibilities

The individual staff member who signs for bank withdrawals will be the responsible party for the full amount of funds that includes returning receipts and unused funds.  Discrepancies will be the sole responsibility of the individual handling the monies.  Failure to return receipts and unused funds, regardless of whether  the individual has left campus at the close of the semester, will result in a hold being placed on the responsible party's student account until funds/receipts are returned.

Section 3: Property

Paragraph 1: Use

The Indian Leader Association will allow its active members with the use of equipment: cameras, voice recorders, etc. However, if the student does not return the property of the Indian Leader Association then the penalty amount (value of the equipment) will be charged to the student's account via the Haskell Business Office, with the approval of the Indian Leader Association advisor(s).

Paragraph 2: Misuse

There will be no misuse of the equipment which is the sole property of the Indian Leader Association, under the supervision of the Indian Leader Executive Board. If there is a discrepancy of misusing equipment or the mistreatment of a fellow member, then the student breaking the procedures of the Association will revoke his/her membership (with the authority of the Editor and Assistant Editor, only) and will be asked not to participate the rest of the fiscal academic year.

Article 11: News Room Policy

Section 1: Newsroom and Management Guidelines

The publication titled "The Indian Leader Newsroom and Management Guidelines" (Appendix A) will be policy for The Indian Leader newspaper. The Indian Leader operates in the same capacity as a business; therefore, everyone will be accountable for following regulations and procedures.

Section 2: NAJA Chapter

The Indian Leader Association is also under the Haskell NAJA (Native American Journalists Association) Student Chapter. The Haskell NAJA Student Chapter allows each branch to use money obtained for the chapter for supplies related to each identified field: Indian Leader (print), Haskell News (video/multimedia).

Section 3: Non-compliance

If an Indian Leader Association Executive Officer does not follow the procedures of the Association, then a majority vote of the active members will take place (nominated by the Advisor, only).

Article 12: Rights & Responsibilities

Section 1: Rights

The Indian Leader Association is published by the students of Haskell Indian Nations University. The newspaper exercises their individual rights to free speech and freedom of the press, guaranteed by the First Amendment Rights have been expressly recognized as rights, which individual students enjoy who attend Bureau of Indian Affairs school in Part 42 of Title 25 of the Code of Federal Regulations, Students' Rights and Due Process Procedures, 25 C.F.R. 42.3 (e)-(f) (1998). These basic rights have also been reaffirmed in Part II of the Code of Student Rights and Responsibilities of Haskell Indian Nations University (1998).

Section 2: Responsibilities

The Indian Leader Association holds responsibilities outlined in 1989 settlement agreement with Haskell Indian Nations University (Appendix B).

Article 13: Amendments

Section 1: (This section intentionally left black for future amendments.)

INDIAN LEADER PLAN OF OPERATIONS                                    10

## PLAN OF OPERATIONS APPROVAL

| University Officials | Date Approved |
|---|---|
| President | 1 - 19 - 2022 |
| Chief of Finance | 01 - 19 - 22 |
| Student Senate President | 01 - 19 - 2021 |
| Faculty Advisor | 2 - 7 - 2022 |

Organization Officers

| | |
|---|---|
| President | 2 - 7 - 2022 |
| Vice President | 2 - 7 - 2022 |
| Secretary | 2/7/2022 |
| Distribution Manager | |
| Treasurer | |

Appendix A


**The Indian Leader**

**Newsroom Policy and Management Guide**


Credits: The policy and management guide is adopted from *The University Daily Kansas* with permission and modified for *The Indian Leader.* Thanks to the *Kansas* for their input and direction.

# The Indian Leader

## Newsroom Policy and Management Guide

# Introduction

Welcome to The Indian Leader. The Indian Leader Newsroom Policy and Management Manual is developed to help orient students, faculty, staff, and others in the management and production of The Indian Leader.

The Indian Leader Newsroom Policy and Management Guide was approved in the Spring of 1993 by the Indian Leader Association, publishers of the Indian Leader and the Haskell Yearbook — last updated 2020.

The Indian Leader is edited and published by students at Haskell Indian Nations University for the purpose of promoting the free and informed debate and discussion of (1) topics of special interest to HINU students and alumni, (2) issues of special importance to Native Americans generally, and (3) all newsworthy topics and public issues of general interest to American citizens. The Haskell Yearbook is edited and published by students at Haskell Indian Nations University for the purpose of maintaining records of the previous year's events.

The Indian Leader Association is committed to improving the ability of Native Americans to determine their own destiny by providing an open public forum in which all concerned citizens, regardless of race, creed, color, sex, religion or national origin, might freely discuss the important public issues of the day. The members of the Association believe that by providing a public forum, readers and contributors alike will improve their understanding of the true meaning of leadership, citizenship and democracy in contemporary American society through an open, honest and fair-minded exchange of views.

# Ethics and Policy

Standards of conduct for staff members of *The Indian Leader* are the same as those adhered to by any responsible professional newspaper. They are outlined here as guidelines that staff members are expected to follow. This policy manual does not describe every circumstance that could pose a problem. It does not answer every question that might arise. Instead, it is designed to establish general rules that editors, reporters and photographers are to use in reporting the news and producing the newspaper. Violation of these standards can be grounds for dismissal.

**Advance Viewing:**

Outside review of copy, photographs or artwork is not permitted unless approved in advance by the editor. For some stories, such as those that involve complex scientific information, a knowledgeable source might be asked to verify the accuracy of specific elements of the story before it is published. An entire story should never be reviewed by someone outside *The Indian Leader* staff. Check with an editor or adviser about similar situations.

**Conflicts of Interest:**

The first obligation of staff members is to perform their assigned *The Indian Leader* duties. To do so, staff members, or anyone who writes for the *The Indian Leader,* must be free from any obligation to any interest other than the public's right to the distribution of news and enlightened opinion.

 Staff members should exercise great care before becoming involved in any political context beyond voting. Under no circumstances may a staff member work, for pay or as a volunteer, in political organizations or campaigns.

 If a relative or close friend is involved in any political activity, a staff member should tell the editors and refrain from covering or making news or editorial judgments about such a campaign or organization. Such precautions should be taken on all types of stories or photographs.

 Because of the nature of the *The Indian Leader* and its readership, student politics and campus political organizations are even more likely to create the appearance of partiality than traditional political organizations. Remember that the appearance of bias is devastating to the newspaper's credibility as is actual bias.

**Other conflicts:** An *Indian Leader* staff member may not work as a staff member, editor or contributor for any other publication or news service without the consent of the *The Indian Leader* editor. Staff members who wish to free-lance periodically for other publications also must seek permission from the editor. Any staff member who is found hiding his affiliation with another publication also must seek permission from the editor. Any staff member who is found hiding his affiliation with another publication will be dismissed.

Appearances on radio or television by *The Indian Leader* staff members may be permissible only if reported in advance to the editor. Remember, however, that only the editor may talk as a representative for *The Indian Leader.*

**Gifts:** As journalists, the obligations of staff members are clear--gather and report the news with vigor and compassion and report it without prejudice. Staff members must not use their positions at *The Indian Leader* to obtain any benefit or advantage not afforded to the public generally. Staff members do not accept business-related gifts or favors, either at home or in the office.

Staff members should not accept free rooms, sample equipment or goods of any kind. Staff members may not accept free trips. Free tickets or access to events may be accepted, but only when special arrangements for the press are necessary. The press box at sporting events is an example. Editors are responsible for making certain that advantage is not being taken of certain situations. Friends or guests are not allowed to use Leader passes to events. *The Indian Leader* pays for tickets to entertainment events that staff members are reviewing. Books and records are accepted only as news releases and become the property of the *Leader.*

*Leader* members should not accept free meals or drinks. This does not mean that staff member cannot accept a cup of coffee or something that can be repaid later. Reporters should not, however, be "wined and dined" while pursuing a story. The cost of meals incurred in the course of gathering stories will be paid by the *Leader.* Generally, however, it is difficult to take accurate and complete notes while eating.

Any travel must be approved by the editor and the Association.

When in doubt, please follow the American Society of Professional Journalists code of ethics in the back of the booklet.

# Dealing with the public

Courteous and professional treatment is afforded anyone who telephones or walks into the newsroom.

**Telephone Etiquette:** When taking messages, be sure to get the correct name and phone number.

Also include your name, the time and date the message was received. The telephone is for business use only.  Do not leave this number for personal messages to be taken by any staff member or the faculty adviser.

**Complaints:** Complaints should be referred to the editor. If no editor is available, take a name and phone number and tell the person that an editor will call back. If a complaint is in any way abusive or if the staff member is threatened, write a short but thorough memo and give it to the editor.

**Corrections:** The decision to run a correction is made by the editor. When the *Leader* incorrectly has reported a story or misidentified someone in a photograph, the editor will arrange for a correction to appear promptly. It may appear on Page 1 if the story was on Page 1. Otherwise corrections will appear on Page 2. When talking to someone who has a complaint, do not verify the mistake, blame anyone, agree with anything or promise anything. Do not give your

personal opinion as to what should be done. Refer the person to those mentioned above. Any staff member who makes a mistake requiring a correction must fill out a correction form and turn it in to the editor.

**News Tip:** When readers call in with news tips or photo ideas, staff members are expected to treat them with courtesy. The *Leader* encourages readers to call or to stop by the newsroom when they have story ideas. It's a way for them to let the editors know what they want to see in the paper, and those ideas often turn into the best stories and photos. Listen patiently to callers, write down the tips and thank them for calling or stopping by the newsroom.

**Letters Policy:** The *Leader* accepts letters to the editor with the understanding that the editor may edit or reject the letters. When readers bring letters to the newsroom, make sure that the letter has a signature and a phone number.

# Police News and Obituaries

**Crime Stories:** In crime stories, description of the incident must be attributed carefully. Police records are protected in cases of libel, but they might be wrong nonetheless. Let readers know where the information came from. When the *Leader* reports that someone has been accused of a crime, the newspaper incurs the obligation to follow the case to trial and to its conclusion.

**Suspect Identification: The *Leader* does not identify suspects in crime stories unless the suspects have been charged in the court system.** An arrest does not mean a suspect has been or will be charged. Identify a person charged with a crime with age and address. Also, the term "alleged" should be used with care. "Alleged murderer" is libelous. A suspect's race or ethnicity should not be mentioned in a story unless the information is part of a detailed description including age, height, weight, attire, and distinguishing characteristics.

**Victim's Names:** The names of juveniles, rape victims and people who have attempted suicide are not published except in circumstances approved by the editor. Consult with the editor when naming the victims of any traumatic event or violent crime.

**Here are some guidelines that staff members should use to determine whether a victim's name should be used.**

**Living or dead.** Did the victim die, or is he or she still living? If the victim survived, it is probably not a good idea to use the name, especially if it was a private individual in a common type of traumatic event. If the victim died, it lends more weight to using the name(as in an obituary).

**Juvenile or adult.** Kansas law protects the identity of juveniles involved in criminal proceedings. The same kind of protection should be given to juveniles involved in traumatic events.

**Prominence/public figure.** Is the person well known? In what context: national, regionally or locally? Determining whether someone is a public or private person should be done in the same manner as it is determined for libel.

**Newsworthiness/manner.** Is the event newsworthy enough to justify it. Unusual circumstances often are cited, but be careful not to sensationalize a tragic event needlessly.

**Rape.** As stated before, rape victim's names should not be used. Do not name the suspect of a rape until the suspect has been charged in court.

**Suicide.** Generally, names should not be used in stories dealing with suicide attempts. If the suicide was newsworthy only because it was a suicide, consider using an obituary format. Then it is appropriate to use the victim's name.

# Dealing with Sources

Staff members must identify themselves when covering any event for the *The Indian Leader,* unless the editor has given approval for reporters or photographers not to disclose their identity. To help reporters and news sources understand what information is fair to report, under what conditions the information may be used and how that information may be obtained, complicated news gathering practices have evolved. Even among journalists, there is disagreement about defining these terms. Listed are some reporting procedures that *The Indian Leader* reporters are expected to follow.

**The Leader Policy:** Our policy is for reporters never to agree to conduct an interview in any way other than on the record, unless the editor has been consulted before the interview. There almost always is some other way to get information. Not for attribution, off the record and background (explained below) many times serve only to tie the hands of both the reporters and the newspaper. Remember, unless a specific agreement is made before the interview, the interview is on the record.

In some cases, exceptions to this policy may be justified. Again, speak to the editor for questions about this.

**On the record:** All the information and name of the news source may be used in a story. Interviews are on the record unless an agreement to the contrary is made in advance. In most cases, reporters will not say an interview is on the record. The assumption is that if someone is

talking to a reporter, the information is for the record. Sometimes out of courtesy, however, reporters should explain to people who are not used to dealing with the press that all information could be used in a story.

**Anonymous Sources:** This is information given to a reporter that can be published, but the identity of the source cannot be used. For example, a district attorney might tell a reporter of plans to move for a mistrial in a murder case. But the district attorney tells the reporter he or she can use the information as long as the reporter identifies the source only as one close to the case. This way the district attorney will not offend witnesses who may first learn about the move by reading the paper.

**Background:** This is a difficult area. Generally, background information is intended to educate and guide the reporter in writing a story, and the gist of the information can be used if the source is identified. A writer should make clear for the reader that the writer is not the original source for the information. For example, an administrative assistant might brief reporters about the college's coming budget and the rationale behind parts of it so they will be better prepared for a news conference or a meeting later in the week.

# Reporting Standards

**Report News; Do Not Make It:** *Leader* staff members should not put themselves in situations that result in their making news or in their altering their presentation. *Leader* reporters should not ask questions during public question-and-answer forums or during public meetings, such as faculty meetings or student senate. Ask questions after the meeting or during intermission. Likewise, the newspaper generally should not intrude into news stories with such phrases as "told the *The Indian Leader"* or "*The Indian Leader* has learned."

**Fairness:** Any viewpoint in a story must be balanced by an opposing viewpoint. This does not mean a reporter should dig up or create controversy. But people or groups that have been criticized in a story must have a chance to respond in the same issue. One call to obtain the other side of an issue is rarely enough. The reporter's obligation is to present a true reflection of the situation.

Do not tarnish the *The Indian Leader's* reputation by acquiring information through questionable means. If in an extreme case the editor approves an extraordinary way to get information, the story will explain how the information was obtained and why it was gathered that way.

**Cultural Sensitivity:** Be sensitive to the concerns of members of other minority groups. Realize that not all people celebrate the same holidays or have the same values. Try to stay abreast of the events that are going on in your sources' lives, no matter what race, religion or sex. As a forum

for a diverse community, *The Indian Leader* cannot afford and will not tolerate prejudice from its staff. Racial slurs, sexual harassment and similar discriminatory misconduct will be grounds for dismissal.

**Direct Quotes:** Except for minor grammatical errors in the speech of ordinary persons, quotations are not to be altered. *The Indian Leader* does correct minor errors that might otherwise take on undue importance or cause the speaker to look foolish. Mispronunciations rarely should be used, even for color, as they tend to make a speaker appear inarticulate. If you want to get a direct quote and have trouble finding a source. Please contact the editor to have arrangements made and they will be able to schedule an interview with you. If you then need additional

**Verification:** In general, do not quote from news releases, other paper's stories or news broadcasts without verifying the information or attributing it. *Leader* reporters are expected to verify information in news releases and then rewrite the releases. Information from another newspaper should be identified as being from that newspaper. Reporters should try to get quotations directly from the source instead of quoting from prepared statements. If quotations are taken from prepared statements, the story should say so. When covering a speech, reporters should try to get a copy of the text to quote the speaker accurately and talk to the speaker afterward for elaboration about specific points.

**Obscenities:** Obscenities and vulgarities should not be used simply to add color or humor. Use them sparingly and only when imperative to give a full portrayal to the reader. The number of listeners—one or two reporters as opposed to an auditorium full of people--often enters into news judgement in questions of obscenity. The editor or assistant editor decides whether to use questionable language.

# Newsroom Management

**Personnel:** The editor handles all problems in the news department. Any staff member with a complaint or scheduling conflict should talk to the editor. Suggestions are welcome.

**Mail Boxes:** Staff members will have mailboxes for messages and assignments. Staff members should check their mailboxes several times a week. They also should not let papers accumulate in their boxes.

**Phones**: Personal long-distance calls will not be tolerated. Making such call is grounds for dismissal. All long-distance calls are to be logged on the out-going telephone log.

**Travel:** Travel must be approved by the editor. Most travel should be authorized first by the Indian Leader Association.

**Materials:** The Leader provides staff with a computer and other materials to layout the paper. The Leader does not provide notebooks.

**Office Access**: Navarre Hall is open from 8-5 p.m. Staff members are expected to organize their time to reflect these hours. If you need in the building beyond specific hours, the time needs to be arranged i advance. This is for *Leader* staff and yearbook activities only.Tecumseh Hall is open at various hours.  A key to Tecumseh and to the *Leader* office will be available to staff at the front desk of the library. Staff must sign keys in and out.  In the event a staff member forgets to return the key to the library the Editor or sponsor must be notified.  A lost key charge of $200 will be submitted to the business office under a staff member's account for lost keys.

**Maintenance:** The newsroom should be clean all the time. The public, faculty and administrators frequently visit, and the newsroom must project every aspect of professionalism. Reporters and editors are expected to clean up around computer terminal(s). Otherwise, loose notebooks and belongings will be thrown away.

 Smoking is prohibited in the building. This includes the newsroom, and other offices. Keep food and beverages away from the terminals. Staff members will be responsible for any damage they cause to them.

**Newsroom Conduct:** Staff members should act as professionals in the newsroom. Less-than-professional behavior will not be tolerated and is grounds for dismissal. Alcohol and substance abuse will not be tolerated and is grounds for dismissal.

# Newsroom Procedures

**Deadlines**: They must be met. The *Leader* reporters are to complete their assignments on deadlines given by the editor. To meet our responsibilities, deadlines need to be staggered. Failure to meet a deadline on schedule is grounds for dismissal.

**Style:** The *Leader* uses *The Associated Press Stylebook.* In addition, a Leader style guide at the end of this pamphlet explains the newspaper's exceptions.

**Datelines and Bylines:** A dateline is not used on a byline unless the reporter was actually at the place named in the dateline and provided a substantial part of the information in the article from that area.

**Staff Meetings:** Staff meetings are held twice a month. Meetings should last no more than 30 minutes. The meetings are for the entire staff. Attendance is mandatory.

# Style Supplement

**AIDS** People do not die of AIDS; they die of complications of AIDS.

**Black** Use when African-American is inappropriate or inaccurate. Capitalize in all instances when referring to people of African ancestry.

**Board of Regents** Use Board of Regents on first reference, then Regents. No apostrophe in any usage.

**chairperson** Do not use chairman or chairwoman. When possible, construct the sentence with the verb "to head" instead of chairperson. For example, "John Doe, who heads the HIJC student board, .. ."

**cities in Kansas** Do not use Kansas or Kan. after Kansas towns, unless they are likely to be confused with big cities in other states, such as Minneapolis, Kan., and Kansas City, Kan.

**coed** do not use coed to refer to a female student. More descriptive uses of the word are acceptable: coed softball, coed residence halls.

**departments** Athletic Department is uppercase, but don't capitalize academic departments (department of history) unless a word normally would be capitalized (department of English, department of History). Governmental departments appear as you normally see them: Department of the Interior.

**grade point average** on first reference, then GPA.

**Coffin Sports Complex** on first reference, the Complex.

**homecoming** It is Homecoming Day, but homecoming.

**Haskell Indian Nations University** When referring to Haskell Indian Nations University use Haskell

**Identification:** Faculty members are identified as thus, Rhonda LeValdo Instructor of Media Communications. Professors who hold distinguished or named professorships should be identified with their complete titles. Thus: John Doe, professor emeritus of history.

Haskell students are identified thus; John Doe, (Creek), Tulsa freshman. Put tribal affiliation in ( ).

But, individuals should always be identified in a manner most appropriate to the context of the story.

**The Indian Leader** *Leader* on second reference.

**names** On second reference, normally use a person's last name only. First names may be used on second reference in stories about children under the age of 10. In stories about several people with the same last name, use first and last names to avoid confusion.

**newspaper names** Italicize names of newspapers and other publications.

**quotes** Avoid using colons to introduce quotes.

**Representatives and Senators** refer to AP Stylebook.

**semesters** When followed by a year, the season is capitalized. For example, Fall 1989. However, fall semester is lowercase.

**senators** Identify student senators by the groups they represent or by their position in Senate, whichever is more important. John Doe, Blalock senator.

**sheriff's office** Douglas County Sheriff's Office on first reference, then sheriff's office. Refer to deputies as deputy sheriff.

**streets** Use AP Stylebook

**theater** Use this spelling except for proper names

**time** The order is time, day, place: 10 a.m. Friday in 141 Ross Hall.

**titles** In the title of a book a lecture or a play, don't capitalize an article (a, an, the), the "to" of an infinitive, a preposition with fewer than five letters, or "and" as, but, if, nor, or," unless the word is the first or the last word of the title. Capitalize the titles of all publications.

**United States** Except in quotes or editorial page copy, change America to United States and American used as an adjective to U.S. wherever the meaning is the nation, not the hemisphere. However, be reluctant to change American used as a noun to U.S. citizen; the meanings are not necessarily synonymous.

**Appendix B**


**Settlement Agreement 1989**

U.S. DISTRICT COURT
DISTRICT OF KANSAS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SEP 19   11 44 AM '89

THE INDIAN LEADER ASSOCIATION, ET AL.,

Plaintiffs,

vs.

Case No. 89-4063-R

UNITED STATES DEPARTMENT OF THE INTERIOR,
ET AL.,

Defendants.

## ORDER APPROVING SETTLEMENT AGREEMENT

NOW ON this 18th day of September 1989, the parties appear before the Court to announce a settlement of the claims of the Plaintiffs herein. The Plaintiffs appear through their attorney, Patrick R. Nichols; the Defendants appear through their attorney, David Cooper.

WHEREUPON, the parties announce to the Court that they have settled and resolved their differences, and entered into a settlement agreement in writing, which is appended hereto.

WHEREUPON, the Plaintiffs move orally to dismiss without prejudice all parties hereto, with the exception of Haskell Indian Junior College. The Court sustains said motion.

THEREUPON, the Court reviews the settlement agreement between the parties, guaranteeing the rights of free expression to the Indian Leader Association and the student journalist Plaintiffs, and find said agreement is valid, just and equitable. The Court approves the agreement.

Pursuant to paragraph 14 of the settlement agreement, the Plaintiffs move to dismiss the remaining party, Haskell Indian Junior College of the Bureau of Indian Affairs, subject to the provisions and terms of the settlement agreement. The Court sustains the motion and orders that the action be dismissed upon the terms of said motion.

The Court orders that hereafter the settlement agreement shall immediately bind the parties to all of its provisions and govern their conduct accordingly.

/s/ RICHARD D. ROGERS

Honorable Richard D. Rogers
United State District Judge

APPROVED:

Patrick R. Nichols
Attorney at Law
700 Jackson, Suite 703
Topeka, Kansas   66603
(913) 357-4050
Ks. S. Ct. No. 09396
Attorney for Plaintiffs

David Cooper
Assistant United States Attorney
U.S. Department of Justice
444 S.E. Quincy
Topeka, Kansas   66603

-2-

51

## SETTLEMENT AGREEMENT

This Settlement Agreement is made between the Indian Leader Association, Marcel Stevens, Laurey Chapman, Ardina Glenn, Cynthia Grant, Tina Melton, Harvey Ross, Cordell Whitetree and Catherine Williams and Haskell Indian Junior College of the Bureau of Indian Affairs of the United States Department of Interior to settle and compromise issues before the United States District Court for the District of Kansas in Indian Leader Association v. United States Department of the Interior, Case No. 89-4063-R (filed March 30, 1989).

1. **Parties to Settlement Agreement.** The parties to this Settlement Agreement are the plaintiff, Indian Leader Association, an unincorporated student association which publishes The Indian Leader (the "Association"), and plaintiffs Marcel Stevens, Laurey Chapman, Ardina Glenn, Cynthia Grant, Tina Melton, Harvey Ross, Cordell Whitetree and Catherine Williams, individually and in their capacities as editors, reporters and representatives of the Association ("Plaintiffs"), and defendant Haskell Indian Junior College of the Bureau of Indian Affairs of the United States Department of the Interior ("Haskell"), which enters into this Settlement Agreement through the agency of Jim Baker, Acting President of Haskell.

Nothing in this Settlement Agreement shall have any bearing on the academic standing of the named plaintiffs or any member of the Indian Leader Association. Nor shall this Settlement Agreement bear on the eligibility of a student to serve as an officer of the Indian Leader Association under the college's rules governing extracurricular activities.

2. **Student Editorial Control.** The parties agree that the members of the Association and the Editorial Board of The Indian Leader have the right to editorial control of the contents of The Indian Leader newspaper as described in the attached Plan of Operation of the Indian Leader Association ("Plan of Operation").

3. **No Prior Restraint or Censorship.** Haskell agrees that no officer, agent, instructor or employee of Haskell shall:

(a) censor, edit or modify the contents of The Indian Leader newspaper in violation of the First Amendment of the United States Constitution;

(b) restrain, obstruct or prohibit the publication of The Indian Leader newspaper or otherwise inhibit the free expression of members of the Association in violation of the First Amendment of the United States Constitution; however, nothing in this Settlement Agreement shall prevent Haskell, the BIA, the Department of the Interior, or Congress from withdrawing any federal funding for The Indian Leader, or from disposing of the printing press on

1

the Haskell campus pursuant to the provisions of the Federal Property and Administrative Services Act or other applicable law;

(c) suspend the publication of The Indian Leader newspaper on the ground that a vacancy has arisen in the position of faculty adviser to the Indian Leader newspaper or the Association.

(d) refuse any written request for the disbursement of funds, reasonably related to the management or publication of The Indian Leader, from the Indian Leader Association Activity Fund, the Club Fund or any other Indian Leader Association account containing student monies in the Haskell Student Bank which is supported by a written resolution of the Editorial Board of The Indian Leader or the full membership of the Association finding "First Amendment Grounds for Funds Withdrawal by Students" as described in the attached Plan of Operation;

(e) refuse to approve a Plan of Operation for the Association substantially similar to the attached Plan of Operation, which is incorporated herein by reference and made an integral part hereof, and which shall be the Plan of Operation in effect for the 1989-1990 school year, or suspend the publication of The Indian Leader on the grounds that the Plan of Operation has not been approved; provided, that nothing in this Settlement Agreement shall prevent Haskell from establishing a journalism or communications department and incorporating The Indian Leader into the curriculum of such an academic program; that if such an academic program is established, Haskell and the members of The Indian Leader Association may revise the Plan of Operation of The Indian Leader Association to reflect incorporation of The Indian Leader under the curriculum of that program; provided further, that nothing in this Settlement Agreement is intended to prevent the members of The Indian Leader Association from adopting a Plan of Operation, or other organic operating charts or substantially dissimilar to the attached Plan of Operation; or

(f) have the right to excise any material from The Indian Leader on the grounds that it is either libelous or obscene.

4. Role of Faculty Adviser. The parties agree that the faculty adviser shall discharge his or her responsibilities consistent with the following guidelines:

(a) The faculty adviser to the Association may freely advise and instruct student editors and reporters in the subject of journalism and relevant professional standards, commend and critique the work product of student journalists, offer fiscal and technological guidance to the newspaper staff in business and production operations and provide whatever assistance to the newspaper and the student journalists the faculty adviser deems appropriate.

2

53

(b) A faculty adviser may make nonbinding recommendations to the student editors which they may, in their sole discretion, take into consideration in the free exercise of their independent editorial judgment.

(c) Although a faculty adviser of the Association may freely offer advice and assistance to student members of the Association, neither the faculty adviser nor any other Haskell officer or employee has the right to censor, edit or modify in any way the content of The Indian Leader.

(d) The faculty adviser is under an affirmative duty to facilitate the disbursement of such funds allocated to the Association as directed by the Editorial Board and the Association by majority vote, supported by written resolution, which are reasonably related to the management and publication of The Indian Leader.

(e) The faculty adviser shall, to the best of his or her ability, adhere to the ethical standards set forth in the attached Code of Ethics of College Media Advisers.

5. Responsibility of Student Journalists. Sole legal responsibility for the contents of The Indian Leader shall rest with the individual members of the Indian Leader Association as recognized in 25 C.F.R. § 42.3 (1988). No legal responsibility for the contents of The Indian Leader shall be imputed to Haskell or the faculty adviser, the Bureau of Indian Affairs or the United States Department of the Interior. Plaintiffs understand that they may be held personally accountable for the contents of The Indian Leader in a court of law, if those contents are libelous or obscene, or infringe copyrights or trademarks, or otherwise give rise to civil liability.

6. Newspaper Account in the Student Bank. Those monies which may be received or collected by Haskell on behalf of the Association, such as the Association's allocation of student activity fees, if any, shall be maintained in the Haskell Student Bank in strict compliance with the applicable rules contained in the Bureau of Indian Affairs Manual ("BIAM"), this section of the Settlement Agreement and the Plan of Operations. Such monies shall be:

(a) the subject of a separate accounting in the Haskell Student Bank and assigned a separate account number;

(b) the subject of a monthly account statement prepared by the Haskell Student Bank which shall be presented to the President of the Indian Leader Association; and

(c) disbursed in accordance with this Settlement Agreement and the attached Plan of Operations.

3

54

7. **Off-Campus Bank Account.** Those monies which are received, collected or raised off campus by the Association, without any intermediation by Haskell, may be deposited, at the election of the Association, in either the Student Bank account or in an off-campus account maintained at a local bank in Lawrence, Kansas. No disbursement from an off-campus bank account shall be made, however, without the signature of at least two officers of the Association on the draft drawn on such local bank. A copy of the monthly accounts of such off-campus bank account shall be published regularly in The Indian Leader. Nothing in this Settlement Agreement shall be read to prohibit Haskell from devising and implementing procedures for managing and accounting for on-campus revenue-raising activities of students.

8. **Elections.** As soon as possible following the execution of this Settlement Agreement, the President of the Association shall call a meeting of the membership of the Association for the purpose of electing the editors of The Indian Leader and the officers of the Association for the 1989-1990 academic year. This meeting shall be called within the first 30 days of the beginning of the fall 1989 semester at Haskell.

9. **Control of Contributions for Subscriptions.** Voluntary contributions made by individuals for subscriptions to The Indian Leader shall no longer be paid to the Haskell Indian Junior College Foundation and shall instead be paid directly to the Association Club Account in the Student Bank.

10. **Waiver of Claims.** This Settlement Agreement represents the final understanding between the parties concerning the resolution of the issues before the United States District Court for the District of Kansas in Indian Leader Association v. United States Department of Interior, Case No. 89-4063-R (filed March 30, 1989). All parties to this Settlement Agreement hereby release the others from any claims or causes of action, and the parties and their counsel agree not to initiate or cause to be initiated, any further proceedings between any of the parties or their counsel, or make any further requests regarding the facts of this case.

11. **Covenant of Good Faith and Fair Dealing.** The parties agree to interpret and implement this Settlement Agreement in good faith and with due regard for both the First Amendment rights of student journalists and the legitimate educational and administrative interests of Haskell. It is the central purpose of this Settlement Agreement to secure the regular publication of The Indian Leader free from any prior restraint or censorship. This Settlement Agreement is contingent upon the reciprocal performance of the specified obligations by all of the parties. In the event that any party acts in bad faith or breaches this Settlement Agreement, the aggrieved party shall be free to pursue appropriate legal remedies in a court of law. Nothing in this Settlement

4

Agreement shall be construed to restrict or limit the right of any of the parties to commence litigation if any party fails to comply with all of the terms and conditions of this Settlement Agreement.

~~12. Use of Printing Press. The parties agree that the use~~ of the federally authorized printing press at Haskell is subject to the Government Printing and Binding Regulations published by the Joint Committee on Printing of the U.S. Congress. See 44 U.S.C. §§ 103, 501, 502.

13. Recognition of Mutual Rights. Any and all rights and responsibilities under this Agreement are set forth in recognition of the mutual rights of the defendant Haskell, and the rights of the students to free speech, press and expression. The Agreement recognizes various rights of Haskell hereunder to alter the Plan of Operation in conjunction with the student journalists (3)(e), to reduce or eliminate funding (3)(b), and to dispose of or sell the printing presses under various provisions of this Agreement (12). These rights may not be exercised by Haskell in response to, or as a result of, articles, photographs or any other content of The Indian Leader. Further, such actions may not legitimately be performed under this Agreement as a form of prior restraint, or otherwise as intended to limit or restrict the free expression of ideas or rights to the students as recognized in this Agreement. Any exercise by Haskell of the rights noted in this paragraph shall be done following notice to The Indian Leader Association, stating the action to be taken and the reasons therefor. Such notice shall be delivered to the editor-in-chief and posted on the Student Activities bulletin board at least thirty (30) days prior to any such contemplated action.

14. Signature and Court Approval. This Agreement shall be signed by all the parties named in Section 1 of this Settlement Agreement or their duly authorized representatives. This Settlement Agreement shall be submitted to the Honorable Richard D. Rogers, Judge for the United States District Court for the District of Kansas, for final approval and shall not become effective until such final approval is obtained. After such final approval has been obtained, the Plaintiffs shall agree to the dismissal without prejudice of the action against all named defendants except Haskell. The Settlement Agreement shall then immediately bind the remaining parties to all of its provisions, and a judgment of dismissal of the action, subject to the terms of the Settlement Agreement, shall then be jointly submitted to the court by the remaining parties.

IN WITNESS WHEREOF, the parties have caused this Settlement Agreement to be executed by their duly authorized representatives on this ____________ day of ________________, 1989.

THE INDIAN LEADER ASSOCIATION

_(signature)_

MARCEL STEVENS
Managing Editor and President
The Indian Leader Association

_(signature)_

CYNTHIA GRANT
Student Journalist

_(signature)_

HARVEY ROSS
Student Journalist

_(signature)_

CORDELL WHITETREE
Student Journalist

_(signature)_

DARIO F. ROBERTSON
Counsel for Plaintiffs

_(signature)_

PATRICK R. NICHOLS
Counsel for Plaintiffs

HASKELL INDIAN JUNIOR COLLEGE

_(signature)_

JIM BAKER
Acting President
Haskell Indian Junior College

_(signature)_

DAVID M. COOPER
Assistant U.S. Attorney
Counsel for the Defendant

6

THE INDIAN LEADER ASSOCIATION
Haskell Indian Junior College
Lawrence, Kansas 66046

PLAN OF OPERATION

## I.   NAME

The name of this organization is The Indian Leader Association and shall hereafter be referred to as the Association.

## II.   PURPOSE

The purpose of the Association is to produce The Indian Leader newspaper, an independent student publication, and the Haskell Yearbook. The Indian Leader newspaper will be produced and published approximately six times each semester and the Haskell Yearbook will be produced and published the spring semester of each school year. The Association will also maintain a separate account to accept funds and donations on behalf of the newspaper and for disbursing cash payments as incentives to students who contribute articles, photographs and illustrations to The Indian Leader.

The Indian Leader is a nationally distributed Native American newspaper edited and published by students at Haskell Indian Junior College for the purpose of promoting the free and informed debate and discussion of (1) topics of special interest to Haskell students and alumni, (2) issues of special importance to Native Americans generally and (3) all newsworthy topics and public issues of general interest to American citizens.

The Indian Leader is published by the students at Haskell Indian Junior College and the members of the Association in the exercise of their individual rights to free speech and freedom of the press guaranteed by the First Amendment of the United States Constitution. These fundamental First Amendment rights have been expressly recognized as rights which individual students enjoy who attend Bureau of Indian Affairs schools in Part 42 of Title 25 of the Code of Federal Regulations. Student Rights and Due Process Procedures, 25 C.F.R. § 42.3(e)-(f) (1988). These basic rights have also been reaffirmed in Part III of the Code of Student Rights and Responsibilities of Haskell Indian Junior College (1988).

The Indian Leader Association is committed to improving the ability of Native Americans to determine their own destiny by providing an open public forum in which all concerned citizens, regardless of race, creed, color, sex, religion or national origin, might freely discuss the important public issues of the day. The members of the Association believe that by providing such a public forum, readers and contributors alike will improve their understanding of the true meaning of leadership, citizenship and democracy in contemporary American society through an open, honest

1

PAGE.08                                    SEP 19 '89  8:58   U S A TOPEKA

# III. MEMBERSHIP AND OFFICERS OF THE ASSOCIATION

## A. General

To qualify as a member of the Association, an individual must:

(a) be an enrolled student at Haskell Indian Junior College;

(b) submit a news story, essay, proposed editorial, poem, short story, photograph or any other journalistic or literary work, not including advertisements, letters to the editor and notices, for publication in The Indian Leader, or participate in the production or circulation of The Indian Leader or the Haskell Yearbook.

(c) receive written notice that the submission has been accepted for publication in The Indian Leader; and

(d) inform the Association, orally or in writing, of an intention to become a member of the Association.

The Editor-in-Chief shall be responsible for keeping a current list of Association members and publishing said list at least once per semester in The Indian Leader.

In the event that any member fails to attend three consecutive meetings of the Association, without excuse, that person may be removed from the membership rolls of the Association by majority vote.

## B. Officers

The officers of the Association shall include a President, Vice President, Treasurer and Secretary. The person elected President of the Association shall also serve as Editor-in-Chief of The Indian Leader and the person elected Vice-President shall also serve as Executive Editor of The Indian Leader.

Officers must maintain "academic good standing," as defined on page 35 of the Haskell Bulletin, 1988-1990, in order to receive a salary as specified in Appendix I containing the 1989-1990 Budget for The Indian Leader. Decisions made at duly convened meetings of the Association are binding on members.

All officers of the Association shall have taken or shall be currently enrolled in at least one course in English or Journalism at Haskell Indian Junior College at the time his or her term of office shall commence in order to be eligible to hold such office.

2

SEP 19 '88 8:59 U S A TOPEKA

PAGE.09

The President shall be the Editor-in-Chief and shall be responsible for the general operation of the paper and the Association.   The President shall pick up and distribute mail daily.

The Editor-in-Chief shall conduct regular and special meetings of student reporters, assign stories, edit manuscripts, oversee reporters and lay out The Indian Leader.

The Executive Editor shall assist the Editor-in-Chief in carrying out his or her assigned duties and shall succeed to the position of Editor-in-Chief in the event of a vacancy in that office prior to next regularly scheduled election.

The circulation manager shall (1) recommend to the printers the approximate number of issues of the newspaper to be published, (2) coordinate the distribution of issues on the day of publication, (3) maintain a current mailing list, (4) make additions, deletions, corrections and other appropriate changes in mailing list, (5) make labels or have labels made, (6) coordinate the process of labeling The Indian Leader for mailing, (7) keep a file of correspondence, and (8) make a weekly report, oral or written, to the Association.

Other positions in the Association shall be established upon the majority vote of the members of the Association.   The Association shall make the guidelines and prescribe the duties of all new positions.   Officers may be removed from office upon the vote of two-thirds of the members of the Association.

## IV.   PARLIAMENTARY AUTHORITY

The rules contained in the current edition of Robert's Rules of Order Newly Revised shall govern the Association in all cases to which they are applicable and in which they are not inconsistent with this Plan of Operation and any special rules of order the Association may adopt.

## V.   MEETINGS

Meetings of the Association shall be held weekly and will be open to all Haskell students and to the public.

At the beginning of each semester, the Association shall decide upon a day, time and place for such regular weekly meetings. Once the day, time and place has been decided by the Association and notice of such has been posted on the bulletin board at the Student Senate Building, no further notice shall be required for the Association to conduct business at such regular weekly meetings.

Any meeting of the Association not held on the day, time and

3

place are the regular weekly meeting may be upon three days' prior written notice. Such notice shall be made to the Association by posting an announcement of the meeting on The Indian Leader Bulletin Board. This notice requirement shall apply to any meeting of the Association, other than regular meetings, referenced in this Plan of Operation, including but not limited to meetings mentioned in Sections III(B), VI and VIII(B) of this Plan of Operation.

A majority of the members of the Association shall constitute a quorum.

## VI. EDITORIAL BOARD AND EDITORIAL CONTROL

The Editorial Board shall consist of the Association President and Editor-in-Chief, the Vice President and Executive Editor, Copy Editor, the Circulation Manager, and the Darkroom Manager. Other positions and members of the Editorial Board may be added by majority vote of either the Editorial Board or the members of the Association. A majority of the members of the Editorial Board shall constitute a quorum.

The Editorial Board shall have primary responsibility for and control of the editorial content of <u>The Indian Leader</u>. Day-to-day editorial decisions shall be made by the Editor-in-Chief, but any question of editorial policy may be put to the vote of the Board of Editors at any regular or special meeting of the Board of Editors.

In the event that the faculty adviser, any member of the Editorial Board or any member of the Association requests, prior to publication, a special review of any portion of an issue of <u>The Indian Leader</u> to determine whether it is libelous or obscene, the entire Editorial Board shall:

(a) carefully read and evaluate the identified material to determine whether it is libelous or obscene;

(b) seek the advice of the faculty adviser and, if possible, experts in the field of student press rights and the law of libel and obscenity, such as legal counsel and journalists designated by the Student Press Law Center in Washington, D.C., the Journalism Education Association or College Media Advisers; and

(c) consult, when appropriate, authoritative treatises for more detailed guidance in determining whether the identified material is libelous or obscene, such as:

(1) Louis E. Ingelhart, <u>Freedom for the College Student Press</u> (Westport, Conn.: Greenwood Press, 1985): 125-151 (on libel), 159-168 (on obscenity); and

(2) Student Press Law Center, <u>Law of the Student Press</u>

4

61

(Washington, D.C.: Student Press Law Center, 1985): 31-38 (on libel), 38-41 (on obscenity);

  (d) make a final, independent determination of whether to publish the identified material; and

  (e) report its determination to the faculty adviser within 24 hours following such decision.

  Any student who has submitted an article for publication may withdraw that article prior to publication upon reasonable written notice to the Editor-in-Chief, provided that such withdrawal can be accomplished without a substantial delay in publication.

## VII. FACULTY ADVISER

  One or more faculty advisers may be appointed by Haskell Indian Junior College to assist students in the publication of The Indian Leader.

  The faculty adviser to the Association may freely advise and instruct student editors and reporters in the subject of journalism and relevant professional standards, commend and critique the work product of student journalists, offer fiscal and technological guidance to the newspaper staff in business and productions operations and provide whatever assistance to the newspaper and the student journalists the faculty adviser deems appropriate.

  A faculty adviser may make nonbinding recommendations to the student editors which they may, in their sole discretion, take into consideration in the free exercise of their independent editorial judgment.

  Although a faculty adviser of the Association may freely offer advice and assistance to student members of the Association, neither the faculty adviser nor any other Haskell officer or employee has the right to censor, edit or modify in any way the content of The Indian Leader.

  The faculty adviser is under an affirmative duty to facilitate the disbursement of such funds belonging to the Association as directed by the Editorial Board and the Association by majority vote, supported by written resolution, which are reasonably related to the management and publication of The Indian Leader.

  The faculty adviser shall, to the best of his or her ability, adhere to the ethical standards set forth in the attached Code of Ethics of College Media Advisers.

  The right of the Association to publish The Indian Leader shall not be conditioned upon the prior appointment of a faculty adviser by Haskell Indian Junior College.  Consequently,

5

result of the inability or unwillingness of Haskell Indian Junior College to appoint a faculty adviser to work with the Association in the event of a vacancy in that position.

The faculty adviser has no power to refuse to facilitate the disbursement of funds reasonably related to the management and publication of The Indian Leader as determined by the Editorial Board or the Association by majority vote.

## VIII. SALARIED POSITIONS OF THE INDIAN LEADER

### A. Officers With Salaries

Salaried positions in the Association shall be those of President, Vice President, Copy Editor, Circulation Manager, Darkroom Manager. The Typesetter shall also receive a salary.

### B. Assistant Officers

Assistant officers shall be elected by majority vote of the members of the Association at the beginning of the last semester prior to the graduation of each salaried officer of the Association. Such assistant officers shall serve as apprentices to the graduating officers for the purpose of receiving the necessary training and experience to assume the responsibilities of the graduating officer after commencement. The assistant officers shall assume the office and responsibilities of the graduating officers on the date of the next commencement at Haskell Indian Junior College following their appointment as assistant officers. Any office not so filled by an assistant officer shall be filled by majority vote of the members of the Association in a regular or special election.

## IX. COMPENSATION AND AWARDS

Compensation and awards shall be as specified in this Section VIII.

Salaried positions shall be compensated according to the rates and amounts specified in Appendix I containing the 1989-90 Budget for The Indian Leader. Students holding salaried positions shall not be paid any other compensation specified in this section.

/Student reporters shall be paid $1.25 per column inch for articles published. Student photographers shall be paid $5.00 for each photograph published. Student artists shall be paid an amount to be determined by majority vote of the Association for each published illustration or cartoon.

The amount and disbursement of monies for any type of contest sponsored by The Indian Leader must be approved by majority vote

6

of the Association.

## X.  ACCOUNTS

### A.  Activity Fund

Any funds allocated to The Indian Leader Association from the student activity fee, paid by each student of Haskell Indian Junior College each semester, shall be deposited in The Indian Leader Association Activity Fund in the Student Bank.  Other monies received or collected by Haskell on behalf of the Association shall also be deposited in that Activity Fund.

Any officer, editor or any other member of the Association or any currently enrolled student or alumnus of Haskell Indian Junior College may, upon written request, examine the records of account of The Indian Leader Association Activity Fund in the Student Bank and may obtain a copy of any such records of account at his or her own expense.

A summary of the records of account shall be published annually in The Indian Leader.

In the absence of a finding by the Association of "First Amendment Grounds for Funds Withdrawal by Students" as described in the following paragraph, withdrawal from the Indian Leader Association Activity Fund shall be made by a faculty adviser, supported by signatures from a student member of the Editorial Board and the Association President.

In the event that the Association or the Editorial Board passes by 2/3 (two-thirds) vote a resolution finding "First Amendment Grounds for Funds Withdrawal by Students," withdrawal from the Indian Leader Association Activity Fund shall be made by President of Haskell Indian Junior College, if the request is reasonably related to the management or publication of The Indian Leader, supported by the signatures of the Association President and another member of the Editorial Board.  "First Amendment Grounds for Funds Withdrawal by Students" exist whenever Haskell Indian Junior College has failed to appoint at least one faculty adviser to the Association or whenever the Association, by 2/3 (two-thirds) vote, reasonably determines that a faculty adviser (1) is in any way obstructing the publication of The Indian Leader, (2) refuses to comply with requests from the Association or the editorial board for disbursements reasonably related to the management or publication of The Indian Leader, or (3) attempts in any way to censor, edit or modify the content of The Indian Leader.

Each withdrawal from The Indian Leader Association Activity Fund must be approved by a majority vote of the Editorial Board or the Association and supported by written resolution.  Each such resolution must explain the purpose of every withdrawal of funds.

7

64

Receipts shall be collected within five (5) days following the disbursement of all funds. A full written accounting of any monies withdrawn pursuant to a resolution finding "First Amendment Grounds for Funds Withdrawal by Students" shall be given to a faculty adviser or, if there is no faculty adviser, to the President of Haskell Indian Junior College within five (5) days following the withdrawal transaction.

Nothing herein binds the federal government (or Haskell) to spend federal appropriated funds to publish The Indian Leader.

B.   Club Fund

Money raised by members may, at the election of the Association, be deposited into a Club Fund at the Student Bank or in an off-campus account at a local bank in Lawrence, Kansas. Such money may be withdrawn for (1) student entertainment, (2) contracting outside services and (3) such other uses benefiting the Association as the Editorial Board may, in its sole discretion, determine to be necessary or appropriate.

In the absence of a determination by the Association of "First Amendment Grounds for Funds Withdrawal by Students" as described in the following paragraph, withdrawal from a Club Fund maintained at the Student Bank shall be made by faculty adviser, supported by signatures from any two student officers of the Association.

In the event that the Association or the Editorial Board passes by majority vote a resolution finding "First Amendment Grounds for Funds Withdrawal by Students," withdrawal from the Club Fund shall be made by the President of Haskell Indian Junior College, supported by the signatures of the Association President and another officer of the Association. "First Amendment Grounds for Funds Withdrawal by Students" exist whenever Haskell Indian Junior College has failed to appoint at least one faculty adviser to the Association or whenever the Association, by majority vote, reasonably determines that a faculty adviser (1) is in any way obstructing the publication of The Indian Leader, (2) refuses to comply with requests from the Association or the editorial board for disbursements reasonably related to the management or publication of The Indian Leader, or (3) attempts in any way to censor, edit or modify the content of The Indian Leader.

Each withdrawal from the Club Fund must be approved by a majority vote of the Editorial Board or the Association and supported by written resolution. Each such resolution must explain the purpose of every withdrawal of funds. Receipts shall be collected following the disbursement of all funds. A full written accounting of any monies withdrawn pursuant to a resolution finding "First Amendment Grounds for Funds Withdrawal by Students" shall be given to a faculty adviser or, if there is no faculty adviser, to the President of Haskell Indian Junior College within five (5)

8

65

days following the withdrawal transaction.

## C.  Contributions for Mailed Subscriptions

The Indian Leader shall be distributed free of charge to anyone interested in receiving a copy.   Any person wishing to receive a mailed subscription to The Indian Leader will be asked to make a $5.00 contribution directly to The Indian Leader Association Activity Fund by check or money order.   The next edition of the Haskell Bulletin shall be amended to provide for the payment of such $5.00 contributions directly into The Indian Leader Association Activity Fund, rather than the Haskell Foundation, a tax exempt organization which has not direct relationship with and provides no funding to The Indian Leader Association.

## D.  Off-Campus Bank Account

Those monies which are received, collected or raised off campus by the Association, without any intermediation by Haskell, may be deposited, at the election of the Association, in either the Student Bank account or in an off-campus account maintained at a local bank in Lawrence, Kansas.  No disbursement from an off-campus bank account shall be made, however, without the signature of at least two officers of the Association on the draft drawn on such local bank.  A copy of the monthly accounts of such off-campus bank account shall be published regularly in The Indian Leader.

9

## APPENDIX I

### 1989-90 BUDGET FOR THE INDIAN LEADER

| Position | Salary | Times 12 Issues |
|---|---|---|
| Editor-in-Chief | $33.50 | 402.00 |
| Executive Editor | 33.50 | 402.00 |
| Copy Editor | 33.50 | 402.00 |
| Circulation Manager | 33.50 | 402.00 |
| Darkroom Manager | 33.50 | 402.00 |
| Typesetter | 33.50 | 402.00 |
| Assistant Circulation | 33.50 | 402.00 |
| Assistant Darkroom | 33.50 | 402.00 |
| Assistant Typesetter | 33.50 | 402.00 |
| Freelance Compensation | 500.00 (per sem.) | $1,000.00 (x2 sem.) |
| Miscellaneous | 300.00 (per sem.) | 600.00 (x2 sem.) |
| Travel Expense | 750.00 (per sem.) | 1,500.00 (x2 sem.) |
| TOTAL | $3,158.00 (per sem.) | $6,718.00 (x2 sem.) |

10

PAGE.17          U S A TOPEKA   9:06   SEP 19 '89

PLAN OF OPERATION APPROVAL

College Officials

_____
PRESIDENT

DIRECTOR OF STUDENT ACTIVITIES

_Kindall D. McHenry_
STUDENT SENATE PRESIDENT

_hannes comhert_
SPONSOR

Organization Officers

_Marcel Stevens_
PRESIDENT

(POSITION VACANT)
VICE PRESIDENT

_Harvey E Ross J._
SECRETARY

_Harvey E Ross J._
TREASURER

Date Approved

_9/14/89_
DATE

_____
DATE

_9 - 15 - 89_
DATE

_9 | 15 | 89_
DATE

Date Approved

_9 - 14 - 89_
DATE

_____
DATE

_15 Sept 89_
DATE

_15 Sept 89_
DATE

11

U.S. DISTRICT COURT
DISTRICT OF KANSAS
SEP 19   11 44 AM '89
RALPH        'ACH.
BY _____
AT 'FERA, KS.   DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THE INDIAN LEADER ASSOCIATION, ET AL.,

             Plaintiffs,

vs.                                 Case No. 89-4063-R

UNITED STATES DEPARTMENT OF THE INTERIOR,
ET AL.,

             Defendants.

## ORDER APPROVING SETTLEMENT AGREEMENT

NOW ON this 18th day of September 1989, the parties appear before the Court to announce a settlement of the claims of the Plaintiffs herein. The Plaintiffs appear through their attorney, Patrick R. Nichols; the Defendants appear through their attorney, David Cooper.

WHEREUPON, the parties announce to the Court that they have settled and resolved their differences, and entered into a settlement agreement in writing, which is appended hereto.

WHEREUPON, the Plaintiffs move orally to dismiss without prejudice all parties hereto, with the exception of Haskell Indian Junior College. The Court sustains said motion.

THEREUPON, the Court reviews the settlement agreement between the parties, guaranteeing the rights of free expression to the Indian Leader Association and the student journalist Plaintiffs, and find said agreement is valid, just and equitable. The Court approves the agreement.

Pursuant to paragraph 14 of the settlement agreement, the Plaintiffs move to dismiss the remaining party, Haskell Indian Junior College of the Bureau of Indian Affairs, subject to the provisions and terms of the settlement agreement. The Court sustains the motion and orders that the action be dismissed upon the terms of said motion.

The Court orders that hereafter the settlement agreement shall immediately bind the parties to all of its provisions and govern their conduct accordingly.

              /s/ RICHARD D. ROGERS
              Honorable Richard D. Rogers
              United State District Judge

APPROVED:

Patrick R. Nichols
Attorney at Law
700 Jackson, Suite 703
Topeka, Kansas   66603
(913) 357-4050
Ks. S. Ct. No. 09396
Attorney for Plaintiffs

David Cooper
Assistant United States Attorney
U.S. Department of Justice
444 S.E. Quincy
Topeka, Kansas   66603

-2-

70

## SETTLEMENT AGREEMENT

This Settlement Agreement is made between the Indian Leader Association, Marcel Stevens, Laurey Chapman, Ardina Glenn, Cynthia Grant, Tina Melton, Harvey Ross, Cordell Whitetree and Catherine Williams and Haskell Indian Junior College of the Bureau of Indian Affairs of the United States Department of Interior to settle and compromise issues before the United States District Court for the District of Kansas in Indian Leader Association v. United States Department of the Interior, Case No. 89-4063-R (filed March 30, 1989).

1.   Parties to Settlement Agreement.   The parties to this Settlement Agreement are the plaintiff, Indian Leader Association, an unincorporated student association which publishes The Indian Leader (the "Association"), and plaintiffs Marcel Stevens, Laurey Chapman, Ardina Glenn, Cynthia Grant, Tina Melton, Harvey Ross, Cordell Whitetree and Catherine Williams, individually and in their capacities as editors, reporters and representatives of the Association ("Plaintiffs"), and defendant Haskell Indian Junior College of the Bureau of Indian Affairs of the United States Department of the Interior ("Haskell"), which enters into this Settlement Agreement through the agency of Jim Baker, Acting President of Haskell.

Nothing in this Settlement Agreement shall have any bearing on the academic standing of the named plaintiffs or any member of the Indian Leader Association. Nor shall this Settlement Agreement bear on the eligibility of a student to serve as an officer of the Indian Leader Association under the college's rules governing extracurricular activities.

2.   Student Editorial Control.   The parties agree that the members of the Association and the Editorial Board of The Indian Leader have the right to editorial control of the contents of The Indian Leader newspaper as described in the attached Plan of Operation of the Indian Leader Association ("Plan of Operation").

3.   No Prior Restraint or Censorship.   Haskell agrees that no officer, agent, instructor or employee of Haskell shall:

(a) censor, edit or modify the contents of The Indian Leader newspaper in violation of the First Amendment of the United States Constitution;

(b) restrain, obstruct or prohibit the publication of The Indian Leader newspaper or otherwise inhibit the free expression of members of the Association in violation of the First Amendment of the United States Constitution; however, nothing in this Settlement Agreement shall prevent Haskell, the BIA, the Department of the Interior, or Congress from withdrawing any federal funding for The Indian Leader, or from disposing of the printing press on

1

the Haskell campus pursuant to the provisions of the Federal Property and Administrative Services Act or other applicable law;

(c) suspend the publication of The Indian Leader newspaper on the ground that a vacancy has arisen in the position of faculty adviser to the Indian Leader newspaper or the Association.

(d) refuse any written request for the disbursement of funds, reasonably related to the management or publication of The Indian Leader, from the Indian Leader Association Activity Fund, the Club Fund or any other Indian Leader Association account containing student monies in the Haskell Student Bank which is supported by a written resolution of the Editorial Board of The Indian Leader or the full membership of the Association finding "First Amendment Grounds for Funds Withdrawal by Students" as described in the attached Plan of Operation;

(e) refuse to approve a Plan of Operation for the Association substantially similar to the attached Plan of Operation, which is incorporated herein by reference and made an integral part hereof, and which shall be the Plan of Operation in effect for the 1989-1990 school year, or suspend the publication of The Indian Leader on the grounds that the Plan of Operation has not been approved; provided, that nothing in this Settlement Agreement shall prevent Haskell from establishing a journalism or communications department and incorporating The Indian Leader into the curriculum of such an academic program; that if such an academic program is established, Haskell and the members of The Indian Leader Association may revise the Plan of Operation of The Indian Leader Association to reflect incorporation of The Indian Leader under the curriculum of that program; provided further, that nothing in this Settlement Agreement is intended to prevent the members of The Indian Leader Association from adopting a Plan of Operation, or other organic operating charts or substantially dissimilar to the attached Plan of Operation; or

(f) have the right to excise any material from The Indian Leader on the grounds that it is either libelous or obscene.

4. Role of Faculty Adviser. The parties agree that the faculty adviser shall discharge his or her responsibilities consistent with the following guidelines:

(a) The faculty adviser to the Association may freely advise and instruct student editors and reporters in the subject of journalism and relevant professional standards, commend and critique the work product of student journalists, offer fiscal and technological guidance to the newspaper staff in business and production operations and provide whatever assistance to the newspaper and the student journalists the faculty adviser deems appropriate.

2

(b) A faculty adviser may make nonbinding recommendations to the student editors which they may, in their sole discretion, take into consideration in the free exercise of their independent editorial judgment.

(c) Although a faculty adviser of the Association may freely offer advice and assistance to student members of the Association, neither the faculty adviser nor any other Haskell officer or employee has the right to censor, edit or modify in any way the content of The Indian Leader.

(d) The faculty adviser is under an affirmative duty to facilitate the disbursement of such funds allocated to the Association as directed by the Editorial Board and the Association by majority vote, supported by written resolution, which are reasonably related to the management and publication of The Indian Leader.

(e) The faculty adviser shall, to the best of his or her ability, adhere to the ethical standards set forth in the attached Code of Ethics of College Media Advisers.

5.    Responsibility of Student Journalists.   Sole legal responsibility for the contents of The Indian Leader shall rest with the individual members of the Indian Leader Association as recognized in 25 C.F.R. § 42.3 (1988). No legal responsibility for the contents of The Indian Leader shall be imputed to Haskell or the faculty adviser, the Bureau of Indian Affairs or the United States Department of the Interior. Plaintiffs understand that they may be held personally accountable for the contents of The Indian Leader in a court of law, if those contents are libelous or obscene, or infringe copyrights or trademarks, or otherwise give rise to civil liability.

6.    Newspaper Account in the Student Bank. Those monies which may be received or collected by Haskell on behalf of the Association, such as the Association's allocation of student activity fees, if any, shall be maintained in the Haskell Student Bank in strict compliance with the applicable rules contained in the Bureau of Indian Affairs Manual ("BIAM"), this section of the Settlement Agreement and the Plan of Operations. Such monies shall be:

(a) the subject of a separate accounting in the Haskell Student Bank and assigned a separate account number;

(b) the subject of a monthly account statement prepared by the Haskell Student Bank which shall be presented to the President of the Indian Leader Association; and

(c) disbursed in accordance with this Settlement Agreement and the attached Plan of Operations.

3

7.  Off-Campus Bank Account.  Those monies which are received, collected or raised off campus by the Association, without any intermediation by Haskell, may be deposited, at the election of the Association, in either the Student Bank account or in an off-campus account maintained at a local bank in Lawrence, Kansas.  No disbursement from an off-campus bank account shall be made, however, without the signature of at least two officers of the Association on the draft drawn on such local bank.  A copy of the monthly accounts of such off-campus bank account shall be published regularly in The Indian Leader.  Nothing in this Settlement Agreement shall be read to prohibit Haskell from devising and implementing procedures for managing and accounting for on-campus revenue-raising activities of students.

8.  Elections.  As soon as possible following the execution of this Settlement Agreement, the President of the Association shall call a meeting of the membership of the Association for the purpose of electing the editors of The Indian Leader and the officers of the Association for the 1989-1990 academic year.  This meeting shall be called within the first 30 days of the beginning of the fall 1989 semester at Haskell.

9.  Control of Contributions for Subscriptions.  Voluntary contributions made by individuals for subscriptions to The Indian Leader shall no longer be paid to the Haskell Indian Junior College Foundation and shall instead be paid directly to the Association Club Account in the Student Bank.

10.  Waiver of Claims.  This Settlement Agreement represents the final understanding between the parties concerning the resolution of the issues before the United States District Court for the District of Kansas in Indian Leader Association v. United States Department of Interior, Case No. 89-4063-R (filed March 30, 1989).  All parties to this Settlement Agreement hereby release the others from any claims or causes of action, and the parties and their counsel agree not to initiate or cause to be initiated, any further proceedings between any of the parties or their counsel, or make any further requests regarding the facts of this case.

11.  Covenant of Good Faith and Fair Dealing.  The parties agree to interpret and implement this Settlement Agreement in good faith and with due regard for both the First Amendment rights of student journalists and the legitimate educational and administrative interests of Haskell.  It is the central purpose of this Settlement Agreement to secure the regular publication of The Indian Leader free from any prior restraint or censorship.  This Settlement Agreement is contingent upon the reciprocal performance of the specified obligations by all of the parties.  In the event that any party acts in bad faith or breaches this Settlement Agreement, the aggrieved party shall be free to pursue appropriate legal remedies in a court of law.  Nothing in this Settlement

4

Agreement shall be construed to restrict or limit the right of any
of the parties to commence litigation if any party fails to comply
with all of the terms and conditions of this Settlement Agreement.

12. Use of Printing Press. The parties agree that the use
of the federally authorized printing press at Haskell is subject
to the Government Printing and Binding Regulations published by the
Joint Committee on Printing of the U.S. Congress.   See 44 U.S.C.
§§ 103, 501, 502.

13. Recognition of Mutual Rights. Any and all rights and
responsibilities under this Agreement are set forth in recognition
of the mutual rights of the defendant Haskell, and the rights of
the students to free speech, press and expression. The Agreement
recognizes various rights of Haskell hereunder to alter the Plan
of Operation in conjunction with the student journalists (3)(e),
to reduce or eliminate funding (3)(b), and to dispose of or sell
the printing presses under various provisions of this Agreement
(12). These rights may not be exercised by Haskell in response to,
or as a result of, articles, photographs or any other content of
The Indian Leader. Further, such actions may not legitimately be
performed under this Agreement as a form of prior restraint, or
otherwise as intended to limit or restrict the free expression of
ideas or rights to the students as recognized in this Agreement.
Any exercise by Haskell of the rights noted in this paragraph shall
be done following notice to The Indian Leader Association, stating
the action to be taken and the reasons therefor. Such notice shall
be delivered to the editor-in-chief and posted on the Student
Activities bulletin board at least thirty (30) days prior to any
such contemplated action.

14. Signature and Court Approval. This Agreement shall be
signed by all the parties named in Section 1 of this Settlement
Agreement or their duly authorized representatives. This
Settlement Agreement shall be submitted to the Honorable Richard
D. Rogers, Judge for the United States District Court for the
District of Kansas, for final approval and shall not become
effective until such final approval is obtained. After such final
approval has been obtained, the Plaintiffs shall agree to the
dismissal without prejudice of the action against all named
defendants except Haskell. The Settlement Agreement shall then
immediately bind the remaining parties to all of its provisions,
and a judgment of dismissal of the action, subject to the terms of
the Settlement Agreement, shall then be jointly submitted to the
court by the remaining parties.

IN WITNESS WHEREOF, the parties have caused this Settlement
Agreement to be executed by their duly authorized representatives
on this _____ day of _____, 1989.

5

PAGE.06                    U S A TOPEKA        8:56  SEP 19 89

75

THE INDIAN LEADER ASSOCIATION                 HASKELL INDIAN JUNIOR COLLEGE

_____              _____
MARCEL STEVENS                                JIM BAKER
Managing Editor and President                 Acting President
The Indian Leader Association                  Haskell Indian Junior College

_____              _____
CYNTHIA GRANT                                 DAVID M. COOPER
Student Journalist                             Assistant U.S. Attorney
                                               Counsel for the Defendant

_____
HARVEY ROSS
Student Journalist

_____
CORDELL WHITETREE
Student Journalist

_____
DARIO F. ROBERTSON
Counsel for Plaintiffs

_____
PATRICK R. NICHOLS
Counsel for Plaintiffs

6

THE INDIAN LEADER ASSOCIATION
Haskell Indian Junior College
Lawrence, Kansas 66046

PLAN OF OPERATION

## I.  NAME

The name of this organization is The Indian Leader Association and shall hereafter be referred to as the Association.

## II.  PURPOSE

The purpose of the Association is to produce The Indian Leader newspaper, an independent student publication, and the Haskell Yearbook.  The Indian Leader newspaper will be produced and published approximately six times each semester and the Haskell Yearbook will be produced and published the spring semester of each school year.  The Association will also maintain a separate account to accept funds and donations on behalf of the newspaper and for disbursing cash payments as incentives to students who contribute articles, photographs and illustrations to The Indian Leader.

The Indian Leader is a nationally distributed Native American newspaper edited and published by students at Haskell Indian Junior College for the purpose of promoting the free and informed debate and discussion of (1) topics of special interest to Haskell students and alumni, (2) issues of special importance to Native Americans generally and (3) all newsworthy topics and public issues of general interest to American citizens.

The Indian Leader is published by the students at Haskell Indian Junior College and the members of the Association in the exercise of their individual rights to free speech and freedom of the press guaranteed by the First Amendment of the United States Constitution.  These fundamental First Amendment rights have been expressly recognized as rights which individual students enjoy who attend Bureau of Indian Affairs schools in Part 42 of Title 25 of the Code of Federal Regulations.  Student Rights and Due Process Procedures, 25 C.F.R. § 42.3(e)-(f) (1988).  These basic rights have also been reaffirmed in Part III of the Code of Student Rights and Responsibilities of Haskell Indian Junior College (1988).

The Indian Leader Association is committed to improving the ability of Native Americans to determine their own destiny by providing an open public forum in which all concerned citizens, regardless of race, creed, color, sex, religion or national origin, might freely discuss the important public issues of the day.  The members of the Association believe that by providing such a public forum, readers and contributors alike will improve their understanding of the true meaning of leadership, citizenship and democracy in contemporary American society through an open, honest

1

PAGE.08                    SEP 19 '89  8:58   U S A TOPEKA

## III. MEMBERSHIP AND OFFICERS OF THE ASSOCIATION

### A. General

To qualify as a member of the Association, an individual must:

(a) be an enrolled student at Haskell Indian Junior College;

(b) submit a news story, essay, proposed editorial, poem, short story, photograph or any other journalistic or literary work, not including advertisements, letters to the editor and notices, for publication in The Indian Leader, or participate in the production or circulation of The Indian Leader or the Haskell Yearbook.

(c) receive written notice that the submission has been accepted for publication in The Indian Leader; and

(d) inform the Association, orally or in writing, of an intention to become a member of the Association.

The Editor-in-Chief shall be responsible for keeping a current list of Association members and publishing said list at least once per semester in The Indian Leader.

In the event that any member fails to attend three consecutive meetings of the Association, without excuse, that person may be removed from the membership rolls of the Association by majority vote.

### B. Officers

The officers of the Association shall include a President, Vice President, Treasurer and Secretary. The person elected President of the Association shall also serve as Editor-in-Chief of The Indian Leader and the person elected Vice-President shall also serve as Executive Editor of The Indian Leader.

Officers must maintain "academic good standing," as defined on page 35 of the Haskell Bulletin, 1988-1990, in order to receive a salary as specified in Appendix I containing the 1989-1990 Budget for The Indian Leader. Decisions made at duly convened meetings of the Association are binding on members.

All officers of the Association shall have taken or shall be currently enrolled in at least one course in English or Journalism at Haskell Indian Junior College at the time his or her term of office shall commence in order to be eligible to hold such office.

2

PAGE.09          U S A TOPEKA     8:59  SEP 19 '88

The President shall be the Editor-in-Chief and shall be responsible for the general operation of the paper and the Association.   The President shall pick up and distribute mail daily.

The Editor-in-Chief shall conduct regular and special meetings of student reporters, assign stories, edit manuscripts, oversee reporters and lay out The Indian Leader.

The Executive Editor shall assist the Editor-in-Chief in carrying out his or her assigned duties and shall succeed to the position of Editor-in-Chief in the event of a vacancy in that office prior to next regularly scheduled election.

The circulation manager shall (1) recommend to the printers the approximate number of issues of the newspaper to be published, (2) coordinate the distribution of issues on the day of publication, (3) maintain a current mailing list, (4) make additions, deletions, corrections and other appropriate changes in mailing list, (5) make labels or have labels made, (6) coordinate the process of labeling The Indian Leader for mailing, (7) keep a file of correspondence, and (8) make a weekly report, oral or written, to the Association.

Other positions in the Association shall be established upon the majority vote of the members of the Association.   The Association shall make the guidelines and prescribe the duties of all new positions.   Officers may be removed from office upon the vote of two-thirds of the members of the Association.

## IV.   PARLIAMENTARY AUTHORITY

The rules contained in the current edition of Robert's Rules of Order Newly Revised shall govern the Association in all cases to which they are applicable and in which they are not inconsistent with this Plan of Operation and any special rules of order the Association may adopt.

## V.   MEETINGS

Meetings of the Association shall be held weekly and will be open to all Haskell students and to the public.

At the beginning of each semester, the Association shall decide upon a day, time and place for such regular weekly meetings. Once the day, time and place has been decided by the Association and notice of such has been posted on the bulletin board at the Student Senate Building, no further notice shall be required for the Association to conduct business at such regular weekly meetings.

Any meeting of the Association not held on the day, time and

3

to the Association by posting an announcement of the meeting on The
Indian Leader Bulletin Board. This notice requirement shall apply
to any meeting of the Association, other than regular meetings,
~~referenced in this Plan of Operation, including but not limited to~~
meetings mentioned in Sections III(B), VI and VIII(B) of this Plan
of Operation.

A majority of the members of the Association shall constitute
a quorum.

## VI. EDITORIAL BOARD AND EDITORIAL CONTROL

The Editorial Board shall consist of the Association President
and Editor-in-Chief, the Vice President and Executive Editor, Copy
Editor, the Circulation Manager, and the Darkroom Manager. Other
positions and members of the Editorial Board may be added by
majority vote of either the Editorial Board or the members of the
Association. A majority of the members of the Editorial Board
shall constitute a quorum.

The Editorial Board shall have primary responsibility for and
control of the editorial content of The Indian Leader. Day-to-day
editorial decisions shall be made by the Editor-in-Chief, but any
question of editorial policy may be put to the vote of the Board
of Editors at any regular or special meeting of the Board of
Editors.

In the event that the faculty adviser, any member of the
Editorial Board or any member of the Association requests, prior
to publication, a special review of any portion of an issue of The
Indian Leader to determine whether it is libelous or obscene, the
entire Editorial Board shall:

(a) carefully read and evaluate the identified material
to determine whether it is libelous or obscene;

(b) seek the advice of the faculty adviser and, if
possible, experts in the field of student press rights and the law
of libel and obscenity, such as legal counsel and journalists
designated by the Student Press Law Center in Washington, D.C., the
Journalism Education Association or College Media Advisers; and

(c) consult, when appropriate, authoritative treatises for
more detailed guidance in determining whether the identified
material is libelous or obscene, such as:

(1) Louis E. Ingelhart, Freedom for the College
Student Press (Westport, Conn.: Greenwood Press, 1985): 125-151
(on libel), 159-168 (on obscenity); and

(2) Student Press Law Center, Law of the Student Press

4

80

(Washington, D.C.:   Student Press Law Center, 1985):   31-38 (on libel), 38-41 (on obscenity);

      (d) make a final, independent determination of whether to publish the identified material; and

      (e) report its determination to the faculty adviser within 24 hours following such decision.

Any student who has submitted an article for publication may withdraw that article prior to publication upon reasonable written notice to the Editor-in-Chief, provided that such withdrawal can be accomplished without a substantial delay in publication.

## VII. FACULTY ADVISER

One or more faculty advisers may be appointed by Haskell Indian Junior College to assist students in the publication of The Indian Leader.

The faculty adviser to the Association may freely advise and instruct student editors and reporters in the subject of journalism and relevant professional standards, commend and critique the work product of student journalists, offer fiscal and technological guidance to the newspaper staff in business and productions operations and provide whatever assistance to the newspaper and the student journalists the faculty adviser deems appropriate.

A faculty adviser may make nonbinding recommendations to the student editors which they may, in their sole discretion, take into consideration in the free exercise of their independent editorial judgment.

Although a faculty adviser of the Association may freely offer advice and assistance to student members of the Association, neither the faculty adviser nor any other Haskell officer or employee has the right to censor, edit or modify in any way the content of The Indian Leader.

The faculty adviser is under an affirmative duty to facilitate the disbursement of such funds belonging to the Association as directed by the Editorial Board and the Association by majority. vote, supported by written resolution, which are reasonably related to the management and publication of The Indian Leader.

The faculty adviser shall, to the best of his or her ability, adhere to the ethical standards set forth in the attached Code of Ethics of College Media Advisers.

The right of the Association to publish The Indian Leader shall not be conditioned upon the prior appointment of a faculty adviser by Haskell Indian Junior College.   Consequently,

5

result of the inability or unwillingness of Haskell Indian Junior College to appoint a faculty adviser to work with the Association in the event of a vacancy in that position.

The faculty adviser has no power to refuse to facilitate the disbursement of funds reasonably related to the management and publication of The Indian Leader as determined by the Editorial Board or the Association by majority vote.

## VIII. SALARIED POSITIONS OF THE INDIAN LEADER

### A. Officers With Salaries

Salaried positions in the Association shall be those of President, Vice President, Copy Editor, Circulation Manager, Darkroom Manager. The Typesetter shall also receive a salary.

### B. Assistant Officers

Assistant officers shall be elected by majority vote of the members of the Association at the beginning of the last semester prior to the graduation of each salaried officer of the Association. Such assistant officers shall serve as apprentices to the graduating officers for the purpose of receiving the necessary training and experience to assume the responsibilities of the graduating officer after commencement. The assistant officers shall assume the office and responsibilities of the graduating officers on the date of the next commencement at Haskell Indian Junior College following their appointment as assistant officers. Any office not so filled by an assistant officer shall be filled by majority vote of the members of the Association in a regular or special election.

## IX. COMPENSATION AND AWARDS

Compensation and awards shall be as specified in this Section VIII.

Salaried positions shall be compensated according to the rates and amounts specified in Appendix I containing the 1989-90 Budget for The Indian Leader. Students holding salaried positions shall not be paid any other compensation specified in this section.

/Student reporters shall be paid $1.25 per column inch for articles published. Student photographers shall be paid $5.00 for each photograph published. Student artists shall be paid an amount to be determined by majority vote of the Association for each published illustration or cartoon.

The amount and disbursement of monies for any type of contest sponsored by The Indian Leader must be approved by majority vote

6

PAGE.13                                    SEP 13 '88  8:08   U S A TOPEKA

82

of the Association.

## X.   ACCOUNTS

### A.   Activity Fund

Any funds allocated to The Indian Leader Association from the student activity fee, paid by each student of Haskell Indian Junior College each semester, shall be deposited in The Indian Leader Association Activity Fund in the Student Bank.   Other monies received or collected by Haskell on behalf of the Association shall also be deposited in that Activity Fund.

Any officer, editor or any other member of the Association or any currently enrolled student or alumnus of Haskell Indian Junior College may, upon written request, examine the records of account of The Indian Leader Association Activity Fund in the Student Bank and may obtain a copy of any such records of account at his or her own expense.

A summary of the records of account shall be published annually in The Indian Leader.

In the absence of a finding by the Association of "First Amendment Grounds for Funds Withdrawal by Students" as described in the following paragraph, withdrawal from the Indian Leader Association Activity Fund shall be made by a faculty adviser, supported by signatures from a student member of the Editorial Board and the Association President.

In the event that the Association or the Editorial Board passes by 2/3 (two-thirds) vote a resolution finding "First Amendment Grounds for Funds Withdrawal by Students," withdrawal from the Indian Leader Association Activity Fund shall be made by President of Haskell Indian Junior College, if the request is reasonably related to the management or publication of The Indian Leader, supported by the signatures of the Association President and another member of the Editorial Board.   "First Amendment Grounds for Funds Withdrawal by Students" exist whenever Haskell Indian Junior College has failed to appoint at least one faculty adviser to the Association or whenever the Association, by 2/3 (two-thirds) vote, reasonably determines that a faculty adviser (1) is in any way obstructing the publication of The Indian Leader, (2) refuses to comply with requests from the Association or the editorial board for disbursements reasonably related to the management or publication of The Indian Leader, or (3) attempts in any way to censor, edit or modify the content of The Indian Leader.

Each withdrawal from The Indian Leader Association Activity Fund must be approved by a majority vote of the Editorial Board or the Association and supported by written resolution.   Each such resolution must explain the purpose of every withdrawal of funds.

7

83

Receipts shall be collected within five (5) days following the disbursement of all funds. A full written accounting of any monies withdrawn pursuant to a resolution finding "First Amendment Grounds for Funds Withdrawal by Students" shall be given to a faculty adviser or, if there is no faculty adviser, to the President of Haskell Indian Junior College within five (5) days following the withdrawal transaction.

Nothing herein binds the federal government (or Haskell) to spend federal appropriated funds to publish The Indian Leader.

B.   Club Fund

Money raised by members may, at the election of the Association, be deposited into a Club Fund at the Student Bank or in an off-campus account at a local bank in Lawrence, Kansas. Such money may be withdrawn for (1) student entertainment, (2) contracting outside services and (3) such other uses benefiting the Association as the Editorial Board may, in its sole discretion, determine to be necessary or appropriate.

In the absence of a determination by the Association of "First Amendment Grounds for Funds Withdrawal by Students" as described in the following paragraph, withdrawal from a Club Fund maintained at the Student Bank shall be made by faculty adviser, supported by signatures from any two student officers of the Association.

In the event that the Association or the Editorial Board passes by majority vote a resolution finding "First Amendment Grounds for Funds Withdrawal by Students," withdrawal from the Club Fund shall be made by the President of Haskell Indian Junior College, supported by the signatures of the Association President and another officer of the Association. "First Amendment Grounds for Funds Withdrawal by Students" exist whenever Haskell Indian Junior College has failed to appoint at least one faculty adviser to the Association or whenever the Association, by majority vote, reasonably determines that a faculty adviser (1) is in any way obstructing the publication of The Indian Leader, (2) refuses to comply with requests from the Association or the editorial board for disbursements reasonably related to the management or publication of The Indian Leader, or (3) attempts in any way to censor, edit or modify the content of The Indian Leader.

Each withdrawal from the Club Fund must be approved by a majority vote of the Editorial Board or the Association and supported by written resolution. Each such resolution must explain the purpose of every withdrawal of funds. Receipts shall be collected following the disbursement of all funds. A full written accounting of any monies withdrawn pursuant to a resolution finding "First Amendment Grounds for Funds Withdrawal by Students" shall be given to a faculty adviser or, if there is no faculty adviser, to the President of Haskell Indian Junior College within five (5)

8

PAGE.15                    SEP 19 '89  9:04    U S A TOPEKA

days following the withdrawal transaction.

C.  Contributions for Mailed Subscriptions

The Indian Leader shall be distributed free of charge to anyone interested in receiving a copy.   Any person wishing to receive a mailed subscription to The Indian Leader will be asked to make a $5.00 contribution directly to The Indian Leader Association Activity Fund by check or money order.   The next edition of the Haskell Bulletin shall be amended to provide for the payment of such $5.00 contributions directly into The Indian Leader Association Activity Fund, rather than the Haskell Foundation, a tax exempt organization which has not direct relationship with and provides no funding to The Indian Leader Association.

D.  Off-Campus Bank Account

Those monies which are received, collected or raised off campus by the Association, without any intermediation by Haskell, may be deposited, at the election of the Association, in either the Student Bank account or in an off-campus account maintained at a local bank in Lawrence, Kansas.   No disbursement from an off-campus bank account shall be made, however, without the signature of at least two officers of the Association on the draft drawn on such local bank.   A copy of the monthly accounts of such off-campus bank account shall be published regularly in The Indian Leader.

9

## APPENDIX I

### 1989-90 BUDGET FOR THE INDIAN LEADER

| Position | Salary | Times 12 Issues |
|---|---|---|
| Editor-in-Chief | $33.50 | 402.00 |
| Executive Editor | 33.50 | 402.00 |
| Copy Editor | 33.50 | 402.00 |
| Circulation Manager | 33.50 | 402.00 |
| Darkroom Manager | 33.50 | 402.00 |
| Typesetter | 33.50 | 402.00 |
| Assistant Circulation | 33.50 | 402.00 |
| Assistant Darkroom | 33.50 | 402.00 |
| Assistant Typesetter | 33.50 | 402.00 |
| Freelance Compensation | 500.00 (per sem.) | $1,000.00 (x2 sem.) |
| Miscellaneous | 300.00 (per sem.) | 600.00 (x2 sem.) |
| Travel Expense | 750.00 (per sem.) | 1,500.00 (x2 sem.) |
| TOTAL | $3,158.00 (per sem.) | $6,718.00 (x2 sem.) |

10

PAGE.17          U S A TOPEKA   9:06   SEP 19 '89

## PLAN OF OPERATION APPROVAL

College Officials

_____
PRESIDENT

Date Approved

_____
DATE   9/14/89

_____
DIRECTOR OF STUDENT ACTIVITIES

_____
DATE

_____
STUDENT SENATE PRESIDENT

_____
DATE   9 - 15 - 89

_____
SPONSOR

_____
DATE   9/15/89

Organization Officers

_____
PRESIDENT   Marcel Stevens

Date Approved

_____
DATE   9 - 14 - 89

(POSITION VACANT)
_____
VICE PRESIDENT

_____
DATE

_____
SECRETARY   Harvey E Ross J.

_____
DATE   15 Sept 89

_____
TREASURER   Harvey E Ross J.

_____
DATE   15 Sept 89

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## KANSAS CITY-LEAVENWORTH DIVISION

| | |
|---|---|
| JARED NALLY, ET AL., | |
| *Plaintiffs,* | Civil Action No.: 21-2113-JAR-TJJ |
| v. | **NOTICE OF APPEAL** |
| TAMARAH PFEIFFER, ET AL., | |
| *Defendants.* | |

In accordance with Rules 3 and 4 of the Federal Rules of Appellate Procedure, Plaintiffs Jared Nally and the Indian Leader Association appeal to the United States Court of Appeals for the Tenth Circuit from this Court's order dismissing Plaintiffs' Third Claim against Defendant Ronald J. Graham in his individual capacity (ECF No. 33), which was certified as a final judgment under Federal Rule Civil Procedure 54(b) on February 8, 2022 (ECF No. 52).

Dated: March 07, 2022

Respectfully submitted,

/s/ Stephen Douglas Bonney

STEPHEN DOUGLAS BONNEY
KS. Bar No. 12322
5542 Crestwood Drive
Kansas City, MO 64110
(816) 363–3675
sdbonney@outlook.com

/s/ Darpana M. Sheth

DARPANA M. SHETH*
NY Bar No. 4287918
KATLYN A. PATTON*
PA Bar No. 328353; OH Bar No. 097911
FOUNDATION FOR INDIVIDUAL
  RIGHTS IN EDUCATION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717–3473
Fax: (215) 717–3440
darpana.sheth@thefire.org
katlyn.patton@thefire.org

1

\* Admitted *Pro Hac Vice*

*Counsel for Plaintiffs Jared Nally and the Indian Leader Association*

## CERTIFICATE OF SERVICE

I, Stephen Douglas Bonney, certify that on March 07, 2022, a true and correct copy of this Notice of Appeal was sent by the ECF electronic notification system to the following counsel of record:

Christopher Allman
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
Tel: (913) 551–6730
Email: chris.allman@doj.gov

Terra D. Morehead
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
Tel: (913) 551–6730
Email: terra.morehead@doj.gov

Wendy A. Lynn
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
Tel: (913) 551–6737
Email: wendy.lynn@doj.gov

*Attorneys for Defendant*

/s/ Stephen Douglas Bonney
STEPHEN DOUGLAS BONNEY
Counsel for Plaintiffs

3